T.C. Memo. 2007-152

UNITED STATES TAX COURT

DAVID A. AND REBECCA ROSE WILBERT, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21972-05.                    Filed June 14, 2007.

David A. and Rebecca Rose Wilbert, pro sese.

<u>Lisa R. Woods</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, <u>Judge</u>:  Respondent determined a $6,787 deficiency in
petitioners' Federal income tax for 2003.  After concessions,[1] we
are asked to decide two issues.  First, we are asked to decide
whether petitioner David A. Wilbert (Mr. Wilbert) was away from

---

[1]See <u>infra</u> note 3 for the concessions of each party.

home when he worked as an airline mechanic for Northwest Airlines (NWA) in Chicago, Anchorage, and Flushing to determine whether petitioners are entitled to deduct expenses for his vehicle, lodging, travel, and meals while Mr. Wilbert was away from Hudson, Wisconsin, in the Minneapolis area where he normally lived. We conclude that he was not away from home. Second, we are asked to decide whether petitioners are entitled to deduct expenses for cleaning Mr. Wilbert's uniforms. We conclude that petitioners are entitled to deduct a portion of these expenses.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. Petitioners resided in Hudson, Wisconsin, at the time they filed the petition.

Mr. Wilbert's Employment With Northwest Airlines

Mr. Wilbert began working for NWA in 1996. He began as an equipment service employee and, about 7 months later, started working as a mechanic. Mr. Wilbert worked in Minneapolis for most of his career with NWA.

NWA sent layoff notices to some of its employees when it experienced financial difficulties. The employees receiving the notices could either choose to accept the layoff or exercise their seniority. Seniority depended on the length of time an employee had worked for NWA, regardless of where the airline facility was located. An employee with higher seniority could

bump an employee with less seniority and take that employee's position. The employee with less seniority could then take the layoff or find another employee with less seniority to bump. This seniority bumping arrangement was in place across the country, so that an NWA mechanic looking to keep his or her job at NWA had to look at several different cities to find a less senior employee to bump.

Mr. Wilbert first received a bump notice on April 6, 2003. Mr. Wilbert chose to exercise his seniority and bump another employee rather than accept the layoff. Mr. Wilbert was able to bump to Chicago, Illinois. Mr. Wilbert began working in Chicago in mid-April 2003, and he worked there for approximately a week before being bumped again by a more senior employee.

Mr. Wilbert then bumped to take a position in Anchorage, Alaska. He started working in Anchorage on April 19, 2003. Mr. Wilbert worked approximately 3 weeks in Anchorage until he was bumped again. Mr. Wilbert then bumped to the very last open position in the NWA system, at LaGuardia Airport in Flushing, New York. Mr. Wilbert started working at LaGuardia Airport on May 12, 2003, and was laid off on May 19, 2003. Mr. Wilbert had fully exercised his seniority and there were no junior employees left to bump.

Mr. Wilbert was unemployed for several weeks. He then accepted a position as a mechanic for NWA in Anchorage, Alaska.

He worked in Anchorage, Alaska, from June 12 through November 11, 2003 and again from December 25, 2003, for about 20 months, until August 2005.[2]

No NWA position was available in Minneapolis for Mr. Wilbert to return to once he was laid off from his position in Minneapolis.  He was forced to bump other employees and work in different cities to stay with NWA.  The timing of a return to Minneapolis depended on NWA's needs for mechanics in that city as well as the choices of other mechanics also subject to the seniority system.

Mr. Wilbert's wife, petitioner Rebecca Rose Wilbert (Mrs. Wilbert) stayed in Hudson, Wisconsin, at the family residence while Mr. Wilbert worked in Chicago, Anchorage, and Flushing. Mr. Wilbert returned to the family residence as much as possible while he worked in the other locations, and his wife also went to visit him occasionally.  Mr. Wilbert paid for lodging while he was working for NWA in Chicago, Anchorage, and Flushing in 2003.

Mr. Wilbert wore a uniform while he worked for NWA.  He also did some real estate work in 2003, but he did not report any income from this activity in 2003.

---

[2]There is no evidence in the record regarding Mr. Wilbert's activities between Nov. 12 and Dec. 24, 2003.

Petitioners' Return

Petitioners claimed certain expenses on Schedule A, Itemized Deductions, on their joint return for 2003.  Respondent examined petitioners' return for 2003 and issued petitioners a deficiency notice in which he disallowed many of the expenses.  Of the expenses still in dispute,[3] petitioners assert they are entitled to deduct unreimbursed employee business expenses related to Mr. Wilbert's NWA mechanic job.  The unreimbursed employee business expenses petitioners claimed include expenses for Mr. Wilbert's vehicle, lodging and pass travel, and meals while he worked in Chicago, Anchorage, and Flushing.  Petitioners also claimed expenses for cleaning Mr. Wilbert's uniforms.

Petitioners timely filed a petition.

---

[3]Respondent concedes that petitioners are entitled to deduct amounts claimed for State and local income taxes, real estate taxes, home mortgage interest, tax preparation fees, union dues, equipment, and professional licenses.  Respondent also concedes that petitioners are entitled to deduct portions of the amounts claimed for "education job," education supplies, gloves, job-related software, office supplies, phone, professional associations, safety boots, and safety equipment, as well as an ID badge expense petitioners did not originally claim on the return.  Petitioners concede they are not entitled to deduct amounts they claimed for cash contributions, noncash contributions, financial publications, flight equipment, Internet, miscellaneous supplies, certain amounts for tools, professional publications, safety glasses, and uniform alterations.  Petitioners also concede they are not entitled to deduct portions of the amounts claimed for "education job," education supplies, gloves, job-related software, office supplies, phone, professional associations, safety boots, and safety equipment.

OPINION

The parties resolved many of the disputed expense deductions before trial. We are asked to determine whether petitioners are entitled to deduct the remaining expenses. We begin by considering whether Mr. Wilbert was away from home when he incurred expenses for his vehicle, lodging, travel, and meals in Chicago, Anchorage, and Flushing.

Travel Expenses While Away From Home

We begin by briefly outlining the rules for deducting travel expenses. A taxpayer may deduct reasonable and necessary travel expenses such as vehicle expenses, meals, and lodging incurred while away from home in the pursuit of a trade or business. Secs. 162(a)(2), 262(a).[4] A taxpayer must show that he or she was away from home when he or she incurred the expense, that the expense is reasonable and necessary, and that the expense was incurred in pursuit of a trade or business. Commissioner v. Flowers, 326 U.S. 465, 470 (1946). The determination of whether the taxpayer has satisfied these requirements is a question of fact. Id.

The purpose of the deduction for expenses incurred away from home is to alleviate the burden on the taxpayer whose business needs require him or her to maintain two homes and therefore

---

[4]All section references are to the Internal Revenue Code in effect for 2003, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

incur duplicate living expenses.  Kroll v. Commissioner, 49 T.C. 557, 562 (1968).  The duplicate costs are not deductible where the taxpayer maintains two homes for personal reasons.  Sec. 262; Commissioner v. Flowers, supra at 474.

A taxpayer may deduct the expenses he or she incurred while away from home.  Sec. 162(a)(2).  The word "home" for purposes of section 162(a)(2) has a special meaning.  It generally refers to the area of a taxpayer's principal place of employment, not the taxpayer's personal residence.  Daly v. Commissioner, 72 T.C. 190, 195 (1979), affd. 662 F.2d 253 (4th Cir. 1981); Kroll v. Commissioner, supra at 561-562.

There is an exception to the general rule that a taxpayer's tax home is his or her principal place of employment.  Peurifoy v. Commissioner, 358 U.S. 59, 60 (1958).  The taxpayer's tax home may be the taxpayer's personal residence if the taxpayer's employment away from home is temporary.  Id.; Mitchell v. Commissioner, T.C. Memo. 1999-283.  On the other hand, the exception does not apply and the taxpayer's tax home remains the principal place of employment if the employment away from home is indefinite.  Kroll v. Commissioner, supra at 562.

It is presumed that a taxpayer will generally choose to live near his or her place of employment.  Frederick v. United States, 603 F.2d 1292, 1295 (8th Cir. 1979).  A taxpayer must, however, have a principal place of employment and accept temporary work in

another location to be away from home.  Kroll v. Commissioner, supra.  A person who has no principal place of business nor a place he or she resides permanently is an itinerant and has no tax home from which he or she can be away.  Deamer v. Commissioner, 752 F.2d 337, 339 (8th Cir. 1985), affg. T.C. Memo. 1984-63; Edwards v. Commissioner, T.C. Memo. 1987-396.

All the facts and circumstances are considered in determining whether a taxpayer has a tax home.  See Rev. Rul. 73-529, 1973-2 C.B. 37 (describing objective factors the Commissioner considers in determining whether a taxpayer has a tax home).  The taxpayer must generally have some business justification to maintain the first residence, beyond purely personal reasons, to be entitled to deduct expenses incurred while temporarily away from that home.  Hantzis v. Commissioner, 638 F.2d 248, 255 (1st Cir. 1981); Bochner v. Commissioner, 67 T.C. 824, 828 (1977); Tucker v. Commissioner, 55 T.C. 783, 787 (1971).  Where a taxpayer has no business connections with the primary residence, there is no compelling reason to maintain that residence and incur substantial, continuous, and duplicative expenses elsewhere.  See Henderson v. Commissioner, 143 F.3d 497, 499 (9th Cir. 1998), affg. T.C. Memo. 1995-559; Deamer v. Commissioner, supra; Hantzis v. Commissioner, supra.  In that situation, the expenses incurred while temporarily away from that residence are not deductible.  Hantzis v. Commissioner, supra;

Bochner v. Commissioner, supra; Tucker v. Commissioner, supra; see McNeill v. Commissioner, T.C. Memo. 2003-65; Aldea v. Commissioner, T.C. Memo. 2000-136.

Once Mr. Wilbert was bumped from Minneapolis, he had no job to return to there. His choices were to be laid off and have no work, or to bump other employees and move to different cities to continue working. NWA no longer required Mr. Wilbert to perform any services whatsoever in the Minneapolis area once he was bumped. Although Mrs. Wilbert remained in the family residence with occasional visits from Mr. Wilbert while Mr. Wilbert worked in Chicago, Anchorage, and Flushing, this fact alone does not dictate that Mr. Wilbert's tax home was in Hudson, Wisconsin, where the family residence was located. Unlike traveling salepersons who may be required to return to the home city occasionally between business trips, Mr. Wilbert's business ties to Minneapolis ceased when he was bumped.[5]

---

[5]Petitioners argue in their reply brief that Mr. Wilbert's real estate business in 2003 was operated from the Minneapolis area and he therefore had a position to return to in the Minneapolis area. Mr. Wilbert acknowledged at trial, however, that he did not report any income from this activity in 2003. We find that Mr. Wilbert's principal employment in 2003 was with NWA. We assume that, if it were feasible for Mr. Wilbert to concentrate solely on real estate activities, he would have accepted a layoff and returned to the Minneapolis area to pursue the real estate activity full-time. Mr. Wilbert did not do this, however. Instead, he continued to travel around the country to keep his job with NWA. Mr. Wilbert's real estate activities are thus not a significant factor in our analysis of Mr. Wilbert's tax home.

The Court understands that the NWA mechanics' lives were unsettled and disrupted.  Mechanics did not know how long they would have a job in one specific location.  They only knew the system was based on seniority.  They could bump less senior employees, and they could be bumped by more senior employees. While we acknowledge that Mr. Wilbert would have liked to return to the Minneapolis area to work for NWA, Mr. Wilbert did not know when such a return would be possible due to the seniority system. The likelihood of Mr. Wilbert's return to a position in Minneapolis depended on NWA's needs for mechanics there as well as the choices of more senior mechanics.  Mr. Wilbert did not know how long he would be in Chicago, Anchorage, Flushing, or where he might go next.  It was not foreseeable that he would be able to return to Minneapolis at any time due to the seniority system.  Thus, we conclude there was no business reason for petitioners to maintain a home in the Minneapolis area. Petitioners kept the family residence in the Minneapolis area for purely personal reasons.  Petitioners have failed to prove that Mr. Wilbert had a tax home in 2003.  Accordingly, Mr. Wilbert was not away from home in Chicago, Anchorage, and Flushing, and the expenses he incurred while there are not deductible.[6]

---

[6]Even if we had found that Mr. Wilbert's tax home during 2003 was Hudson, Wisconsin, Mr. Wilbert may not be treated as temporarily away from home while he worked in Anchorage because the position lasted over a year.  See sec. 162(a).

Substantiation of Expenses

We next examine whether petitioners are entitled to deduct expenses for cleaning Mr. Wilbert's uniforms.  We begin by noting the fundamental principle that the Commissioner's determinations are generally presumed correct, and the taxpayer bears the burden of proving that these determinations are erroneous.[7]  Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. 111 (1933).  Moreover, deductions are a matter of legislative grace, and the taxpayer has the burden to prove he or she is entitled to any deduction claimed. Rule 142(a); Deputy v. du Pont, 308 U.S. 488, 493 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Welch v. Helvering, supra.  This includes the burden of substantiation. Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).

A taxpayer must substantiate amounts claimed as deductions by maintaining the records necessary to establish he or she is entitled to the deductions.  Sec. 6001; Hradesky v. Commissioner, supra.  The taxpayer shall keep such permanent records or books of account as are sufficient to establish the amounts of deductions claimed on the return.  Sec. 6001; sec. 1.6001-1(a),

---

[7]Petitioners do not claim the burden of proof shifted to respondent under sec. 7491(a).  Petitioners also did not establish that they satisfy the requirements of sec. 7491(a)(2). We therefore find that the burden of proof remains with petitioners.

(e), Income Tax Regs. The Court need not accept a taxpayer's self-serving testimony when the taxpayer fails to present corroborative evidence. Beam v. Commissioner, T.C. Memo. 1990-304 (citing Tokarski v. Commissioner, 87 T.C. 74, 77 (1986)), affd. without published opinion 956 F.2d 1166 (9th Cir. 1992).

In general, all ordinary and necessary expenses paid or incurred in carrying on a trade or business during the taxable year are deductible, but personal, living, or family expenses are not deductible. Secs. 162(a), 262. Services performed by an employee constitute a trade or business. O'Malley v. Commissioner, 91 T.C. 352, 363-364 (1988); sec. 1.162-17(a), Income Tax Regs.

If a taxpayer establishes that he or she paid or incurred a deductible business expense but does not establish the amount of the deduction, we may approximate the amount of the allowable deduction, bearing heavily against the taxpayer whose inexactitude is of his or her own making. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). For the Cohan rule to apply, however, a basis must exist on which this Court can make an approximation. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). Without such a basis, any allowance would amount to unguided largesse. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

Cleaning Expenses for Uniforms

Petitioners claimed $1,022 for cleaning expenses for Mr. Wilbert's NWA uniforms.  Expenses for uniforms are deductible if the uniforms are of a type specifically required as a condition of employment, the uniforms are not adaptable to general use as ordinary clothing, and the uniforms are not worn as ordinary clothing.  Yeomans v. Commissioner, 30 T.C. 757, 767-769 (1958); Beckey v. Commissioner, T.C. Memo. 1994-514.

We are satisfied that petitioners incurred deductible expenses for uniform cleaning.  Mr. Wilbert testified that he needed to clean his uniforms separately from his other laundry, often in coin-operated-laundry machines.  He acknowledged that he did not have receipts for dry cleaning nor any other documentation indicating how he arrived at $1,022.  Mr. Wilbert testified that in previous years, it cost him approximately $10 per week to clean his uniforms.  Mr. Wilbert also testified it cost more to clean his uniforms in 2003 than it had previously. We are permitted to estimate the amount of cleaning expenses for uniforms under the Cohan rule.  We find that $12 per week of uniform cleaning costs for the approximate 43 weeks that Mr. Wilbert worked for NWA in 2003 is reasonable.  Accordingly, we find that petitioners are entitled to deduct $516 of cleaning expenses for uniforms.

To reflect the foregoing and the concessions of the parties,

<u>Decision will be entered</u>

<u>under Rule 155</u>.