T.C. Memo. 2014-57

UNITED STATES TAX COURT

ANTONIO EDWARDS AND CARMEN S. EDWARDS, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20238-09.                    Filed April 1, 2014.

Antonio Edwards and Carmen S. Edwards, pro se.

Lauren N. May and J. Spencer Hitt, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PARIS, Judge:  On June 1, 2009, respondent issued to petitioners a notice of

deficiency for tax year 2007, determining a deficiency in Federal income tax of

[*2] $33,980 and an accuracy-related penalty under section 6662(a)[1] of $6,796. On August 24, 2009, petitioners filed a petition in this Court for redetermination of the alleged deficiency. Respondent filed an amended answer asserting, pursuant to section 6214(a), that petitioners were liable for an increased Federal income tax deficiency of $103,705 and an increased accuracy-related penalty under section 6662(a) of $20,741.

Before trial, the parties agreed to some of the amounts at issue in a stipulation of settled issues filed March 4, 2013, and supplemented March 7, 2013. The parties also made a number of agreements and concessions at trial. On April 22 and 25, 2013, respondent filed an amendment to his amended answer and an amended amendment to his amended answer reflecting these agreements and concessions and asking to conform the pleadings to the evidence.

On the basis of these amendments, respondent asserted an adjusted deficiency in Federal income tax of $91,887 and an accuracy-related penalty under section 6662(a) of $18,377 for tax year 2007. After the parties' concessions, the remaining issues for decision are:

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

**[*3]** (1) whether petitioners failed to report on Schedule C, Profit or Loss From Business, $202,484 in gross receipts or sales for tax year 2007;

(2) whether petitioners are entitled to deduct various Schedule C business expenses for tax year 2007; and

(3) whether petitioners are liable for the accuracy-related penalty under section 6662(a) for tax year 2007.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits received in evidence are incorporated herein by this reference. Petitioners resided in Illinois when their petition was filed.

During tax year 2007 petitioner Antonio Edwards owned and operated a consulting firm doing business as Opus Viva, LLC, the Opus Group, Ltd., and Opus USA, LLC (collectively, Opus). Although Mr. Edwards operated this business under multiple names, he reported for tax purposes as a single sole proprietorship. While petitioners resided in Chicago, Illinois, the principal place of business for Opus was Trinidad and Tobago. Mr. Edwards traveled frequently between Chicago and Trinidad and Tobago, incurring significant expenses in the process. Mr. Edwards also completed his M.B.A. from Northwestern University during tax year 2007.

**[*4]** During tax year 2007 Opus provided consulting services exclusively for companies located in Trinidad and Tobago. Mr. Edwards hired a number of independent consultants whom he paid on a contract basis to work with certain clients. Initially, Mr. Edwards rented a living space in Trinidad and Tobago in which he set up a home office with all the requisite business equipment to operate his business. In February 2007 Mr. Edwards began renting dedicated business space in Trinidad and Tobago for Opus' operations.

Opus maintained a single bank account with respect to its business activities. This account was maintained at RBTT Bank, Ltd., in Trinidad and Tobago and was held open under the name "The Opus Group Caribbean Limited" (Opus account). During the year at issue Mr. Edwards deposited the income earned and received in connection with the operation of Opus into the Opus account. Additionally, Mr. Edwards maintained a business line of credit through Chase Bank and testified at trial that some of the money entering the Opus account was the result of wire transfers from this line of credit.

Mr. Edwards kept only minimal books and records to document these deposits and did not record the precise amount of income earned by Opus in tax year 2007. Similarly, Mr. Edwards maintained incomplete records of Opus' line of credit and any wire transfers or payments made in connection therewith. At

[*5] trial, Mr. Edwards repeatedly stressed that business in Trinidad and Tobago relied heavily on cash dealings and that the financial reporting standards were much less stringent than those in the United States.

Petitioners timely filed their Federal income tax return for tax year 2007. Attached to petitioners' 2007 Form 1040, U.S. Individual Income Tax Return, was a Schedule C reporting gross receipts of $30,000 and expenses of $151,609 related to Opus. As a result, petitioners reported a net Schedule C loss of $121,609 for tax year 2007.

Petitioners' 2007 Federal income tax return was later selected for examination. During the course of the examination, petitioners submitted a proposed Form 1040X, Amended U.S. Individual Income Tax Return, for tax year 2007. This proposed amended return was received by respondent but was not signed by petitioners and was not filed as a qualifying amended return for tax year 2007.[2] Attached to this proposed amended return was a substitute Schedule C reporting gross receipts and expenses related to Opus for tax year 2007. This

---

[2]Respondent did not accept the positions asserted in this proposed amended return. It is included in evidence as an expression of petitioners' current legal position as adopted during these proceedings. To the extent that the amounts reported on the proposed amended return are in agreement with the notice of deficiency, such amounts are deemed conceded by petitioners. The proposed amended return was dated April 2, 2009, and did reflect a preparer's signature, but not the signatures of petitioners.

[*6] amended Schedule C increased the originally reported gross receipts from $30,000 to reported gross receipts of $178,800. In addition, the originally reported business expenses were increased from a total of $151,609 to a total of $365,809 in the following categories:

| Item | Amount |
|------|--------|
| Advertising | $7,500 |
| Contract labor | 159,000 |
| Insurance | 7,250 |
| Legal & professional services | 400 |
| Office expenses | 18,800 |
| Repairs & maintenance | 3,355 |
| Supplies | 7,780 |
| Taxes & licenses | 18,000 |
| Travel | 22,579 |
| Utilities | 2,470 |
| Other expenses | 118,675 |
| Total | 365,809 |

On their proposed amended return petitioners reported a net Schedule C loss of $190,609 for tax year 2007.

Respondent's revenue agent did not consider this proposed amended return during the examination because it was unsigned and did not qualify as a valid

[*7] amended return for tax year 2007. Instead, on June 1, 2009, respondent issued to petitioners a notice of deficiency for tax year 2007 based solely on the original Form 1040. This notice determined a deficiency in income tax of $33,980 and an accuracy-related penalty under section 6662(a) of $6,796. This determination was based on the disallowance of deductions for petitioners' Schedule C travel expenses of $22,579 and Schedule C expenses of $100,275 categorized by petitioners as "other expenses". Petitioners filed a timely petition with this Court for redetermination of the alleged deficiency.

During the pendency of these proceedings, respondent's counsel became aware of petitioners' proposed amended return prepared during the examination of their 2007 tax return. In addition, respondent conducted a bank deposits analysis on the Opus account and found that during tax year 2007 deposits were made in Trinidad and Tobago dollars in amounts totaling TT$1,456,501--equal to USD$232,484.[3]

---

[3]The yearly average exchange rate to convert Trinidad and Tobago dollars to U.S. dollars for tax year 2007 was .15961808. This figure will be used in converting all amounts to U.S. dollars for the purposes of this opinion.

**[*8]**   As a result of these discoveries, respondent filed an amended answer on

August 22, 2011,[4] asserting an increased deficiency of $103,705 and an adjusted

accuracy-related penalty under section 6662(a) of $20,741 for tax year 2007.

These increases were based on the following modifications to the notice of

deficiency:

(1) Schedule C gross receipts were increased by $202,484 on the basis of

respondent's bank deposits analysis;

(2) respondent allowed $5,758 of Schedule C travel expenses of the $22,579

previously disallowed in the notice of deficiency, resulting in a net adjustment to

taxable income of $16,821; and

(3) respondent allowed $34,454 in Schedule C other expenses of the

$100,275 previously disallowed in the notice of deficiency, resulting in a net

adjustment to taxable income of $65,821.

On March 4, 2013, a pretrial conference was held with the parties in which a

stipulation of facts and a stipulation of settled issues were submitted.  Pursuant to

the parties' stipulation of settled issues, petitioners were allowed deductions for

---

[4]From April 13, 2010, to August 15, 2011, this proceeding was stayed pursuant to the automatic stay provision of the Bankruptcy Code.  See 11 U.S.C. sec. 362(a)(8) (2006).

[*9] Schedule C contract labor expenses of $16,488.55, Schedule C other: bank expenses of $59, and Schedule C returns and allowances of $9,497.

On March 7, 2013, the trial of this case was held in Chicago, Illinois. At trial petitioners adopted the Schedule C gross receipts and expenses for tax year 2007 as reported on their proposed amended return as their position for trial.[5] Furthermore, during the trial the following additional concessions were made:

(1) petitioners conceded that they were not entitled to deduct the $159,000 of Schedule C contract labor expenses reported on their proposed amended return, maintaining instead that they are entitled to deduct Schedule C contract labor expenses of $89,922. Respondent stipulated that petitioners are entitled to deduct additional contract labor expenses beyond the amount allowed in the stipulation of settled issues, resulting in a total of $22,473.55 allowed;

(2) petitioners conceded that the amount respondent previously allowed in his amended answer for Schedule C rent was correct; and

(3) the parties stipulated that petitioners are entitled to deduct Schedule C permits and licenses of $899 instead of the $1,250 previously claimed.

---

[5]Petitioner Carmen Edwards did not appear at trial but consented to let Mr. Edwards appear on her behalf and signed the stipulation of settled issues, the supplemental stipulation of settled issues, and the stipulation of facts. On January 23, 2013, Mrs. Edwards filed a Form 8857, Request for Innocent Spouse Relief, but the claim for sec. 6015 relief is not set forth in the pleadings of this case.

[*10]   On April 22 and 25, 2013, respondent filed an amendment to his amended answer and an amended amendment to his amended answer, respectively.  These documents memorialized the stipulations and concessions made by the parties during the pendency of the case and at trial and conformed the pleadings to the evidence.  As a result, in his amended amendment to the amended answer, respondent determined the updated total deficiency for tax year 2007 to be $91,887 with an accuracy-related penalty under section 6662(a) of $18,377.40.

The parties' positions regarding the remaining Schedule C expenses and the amounts currently in dispute can be summarized as follows:

| Item | Petitioners' position at trial | Allowed by respondent [1] | Amount at issue |
|---|---|---|---|
| Contract labor | $89,922 | $22,473 | $67,449 |
| Office expenses | 18,800 | -0- | 18,800 |
| Taxes & licenses [2] | 18,000 | -0- | 18,000 |
| Travel, meals & entertainment | 22,579 | 5,746 | 16,833 |
| Other:  Amortization | 18,400 | -0- | 18,400 |
| Other:  Bank charges | 275 | 59 | 216 |
| Other:  Delivery | 380 | -0- | 380 |
| Other:  Dues & subscriptions | 750 | -0- | 750 |
| Other:  Furniture | 15,000 | 7,714 | 7,286 |

| | | | |
|---|---|---|---|
| [*11] Other: Interest expense | 24,870 | -0- | 24,870 |
| Other: Postage | 780 | -0- | 780 |
| Other: Telephone | 15,500 | 7,714 | 7,786 |
| Other: Transportation | 9,000 | -0- | 9,000 |
| Other: Vehicle expenses | 14,470 | 5,746 | 8,724 |

[1] Respondent's position as reflected in this table is that expressed in the amended amendment to the amended answer.

[2] These "Taxes & licenses" are distinct from the previously stipulated "permits and licenses" discussed above.

OPINION

I. Gross Receipts

It is well established that the Commissioner's determinations, as embodied in his statutory notices of deficiency, are generally presumed correct. Welch v. Helvering, 290 U.S. 111, 115 (1933). Nonetheless, the burden of proof will be on the Commissioner where he raises a new issue in his pleadings. See Rule 142(a); Turner v. Commissioner, 68 T.C. 48 (1977). As the issue of unreported gross receipts was raised in the amended answer and not in the notice of deficiency, respondent bears the burden of proof with respect to this issue.

[*12] Section 61(a)(1) defines gross income as all income from whatever source derived including compensation for services such as wages, salaries, and bonuses. See also sec. 1.61-2(a)(1), Income Tax Regs. Taxpayers are required to maintain books and records sufficient to establish the amount of their gross income. Sec. 6001. If the taxpayer fails to do this, then the Commissioner may reconstruct the taxpayer's income through the use of any reasonable method. See Holland v. United States, 348 U.S. 121 (1954); Giddio v. Commissioner, 54 T.C. 1530, 1532-1534 (1970).

The "bank deposits" method has long been upheld as a reasonable means of determining income where a taxpayer is unwilling or unable to provide adequate books and records. DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992); Fisher v. Commissioner, T.C. Memo. 1997-450. Bank deposits are deemed prima facie evidence of the receipt of income by the taxpayer. Parks v. Commissioner, 94 T.C. 654, 658 (1990) (citing Tokarski v. Commissioner, 87 T.C. 74, 77 (1986)).

During the examination of petitioners' 2007 tax return respondent conducted a bank deposits analysis of the income flowing through Opus. Throughout tax year 2007 Mr. Edwards was the owner and operator of Opus and maintained only one business bank account with respect to that business. While

[*13] petitioners reported gross receipts of only $30,000 on their 2007 Federal income tax return, respondent's analysis revealed that $232,484 was deposited into the Opus account during tax year 2007. The burden is on petitioners to prove that respondent's determination of unreported income, computed using the bank deposits method of reconstructing income, is incorrect. See Parks v. Commissioner, 94 T.C. at 658; see also Nicholas v. Commissioner, 70 T.C. 1057, 1064 (1978); Zarnow v. Commissioner, 48 T.C. 213, 216 (1967). However, respondent will bear the burden of proving any additional deficiency or penalty amounts raised in his pleadings. See Rule 142(a).

On the proposed amended return petitioners now adopt as their position at trial, petitioners reported Schedule C gross receipts of $178,800. Petitioners now assert that this is the correct amount of gross receipts for Opus for tax year 2007. This is a large departure from the position taken on their original tax return for tax year 2007, yet still in disagreement with respondent's determination that Opus had $232,484 in receipts for tax year 2007. Respondent asserts that his bank deposits analysis and supporting evidence presented at trial are sufficient to meet his burden of proving this amount. The Court agrees and finds that petitioners now bear the burden of proving that they did not have Schedule C gross receipts of $232,484 for tax year 2007.

**[*14]**   Petitioners assert that the difference between the $178,800 in gross receipts to which they agree and the $232,484 revealed by the bank deposits analysis is attributable to nontaxable transfers from Opus' line of credit with Chase Bank. Petitioners point specifically to a wire transfer of TT$368,954, or USD$58,892, into the Opus account on June 15, 2007, as an example of one such nontaxable transfer.  However, petitioners did not provide sufficient documentation to decisively indicate that the transfer was properly attributable to Opus' line of credit.  The bank statements themselves do not include a description of the origin of the funds, nor do the statements include any wire transfer information. Petitioners did produce evidence of a Chase Bank account for a business line of credit for Opus, USA, LLC, which was opened in 2006 with a credit limit of $100,000.

Petitioners also provided statements from that account; however, the documents they provided were incomplete.  The account statement for June 2007 includes only the first and last pages for the monthly statement and does not provide any supporting evidence that the alleged wire transfer took place.  The only transfer reflected in the documentation from Chase Bank occurred in tax year 2006.  Consequently, petitioners failed to produce any substantive evidence that the $58,892 deposit on June 15, 2007, was from the Chase Bank line of credit or

**[*15]** was attributable to a nontaxable transfer. Petitioners have likewise failed to make a showing beyond suggested explanations as to why respondent's determination of Schedule C gross receipts for tax year 2007 was incorrect. Accordingly, respondent's determination that Opus had $232,484 in gross receipts for tax year 2007 is sustained.

## II. Schedule C Expenses

Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that he is entitled to any deduction claimed. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Section 6001 requires taxpayers to maintain records sufficient to establish the amount of each deduction. See also sec. 1.6001-1(a), Income Tax Regs.

Section 162(a) allows a deduction for ordinary and necessary expenses that a taxpayer pays in connection with the operation of a trade or business. Boyd v. Commissioner, 122 T.C. 305, 313 (2004). To be "ordinary" the expense must be of a common or frequent occurrence in the type of business involved. Deputy v. duPont, 308 U.S. 488, 495 (1940). To be "necessary" an expense must be "appropriate and helpful" to the taxpayer's business. Welch v. Helvering, 290 U.S. at 113. Additionally, the expenditure must be "directly connected with or

[*16] pertaining to the taxpayer's trade or business". Sec. 1.162-1(a), Income Tax Regs. Section 262(a) disallows deductions for personal, living, or family expenses.

If a taxpayer establishes that an expense is deductible, but is unable to substantiate the precise amount, the Court may estimate the amount, bearing heavily against the taxpayer whose inexactitude is of his own making. See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). The taxpayer must present sufficient evidence for the Court to form an estimate because without such a basis, any allowance would amount to unguided largesse. Williams v. United States, 245 F.2d 559, 560-561 (5th Cir. 1957); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

However, section 274 overrides the Cohan rule with regard to certain expenses as it requires stricter substantiation for travel, meals, and certain listed property such as passenger automobiles. See Sanford v. Commissioner, 50 T.C. 823, 828 (1968), aff'd per curiam, 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). Section 274(d) provides that no deduction shall be allowed unless the taxpayer substantiates, by adequate records or by sufficient evidence corroborating the taxpayer's own statements, the amount, time and place, and business purpose of the expense. See

[*17] <u>Oswandel v. Commissioner</u>, T.C. Memo. 2007-183; sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).

A. <u>Travel and Transportation Expenses</u>

Section 162(a) allows a deduction for "traveling expenses * * * while away from home in the pursuit of a trade or business". For a taxpayer to qualify for this deduction, three conditions must be met: (1) the expenses must be ordinary and necessary; (2) the expenses must have been incurred while the taxpayer was "away from home"; and (3) the taxpayer must have incurred the expenses in pursuit of a trade or business. <u>Barone v. Commissioner</u>, 85 T.C. 462, 465 (1985), <u>aff'd without published opinion</u>, 807 F.2d 177 (9th Cir. 1986); <u>Wilbert v. Commissioner</u>, T.C. Memo. 2007-152, <u>aff'd</u>, 553 F.3d 544 (7th Cir. 2009); <u>see also</u> <u>Commissioner v. Flowers</u>, 326 U.S. 465, 470 (1946).

In general, a taxpayer's "tax home" is his principal place of business.[6] <u>See</u>

_____

[6]As an exception to the general rule, a taxpayer may claim his personal residence as his tax home in situations where the taxpayer is away from home on a temporary rather than indefinite or permanent basis. <u>Peurifoy v. Commissioner</u>, 358 U.S. 59, 60 (1958); <u>Kroll v. Commissioner</u>, 49 T.C. 557, 562 (1968). A place of business is temporary if the employment is such that termination within a short period of time can be foreseen. <u>Mitchell v. Commissioner</u>, 74 T.C. 578, 581 (1980). However, petitioners do not allege that Mr. Edwards' employment in Trinidad and Tobago was temporary, and the record is consistent in establishing that Opus is a going concern and was intended to be a source of permanent employment for Mr. Edwards.

[*18] Mitchell v. Commissioner, 74 T.C. 578, 581 (1980); Daly v. Commissioner, 72 T.C. 190, 195 (1979), aff'd, 662 F.2d 253 (4th Cir. 1981); Kroll v. Commissioner, 49 T.C. 557, 562 (1968). The Court must therefore consider the "away from home" requirement "in light of the further requirement that the expense be the result of business exigencies." Hantzis v. Commissioner, 638 F.2d 248, 253 (1st Cir. 1981), rev'g T.C. Memo. 1979-299. Where a taxpayer's principal place of employment is other than his residence and he chooses not to move his residence for personal reasons, his additional living and travel expenses are a result of that personal choice. Commissioner v. Flowers, 326 U.S. at 470; Tucker v. Commissioner, 55 T.C. 783, 786 (1971); Minick v. Commissioner, T.C. Memo. 2010-12.

Petitioners contend that they should be able to deduct Mr. Edwards' airfare for travel between Chicago and Trinidad and Tobago as well as expenses for a car service that drove Mr. Edwards to and from the airport in Chicago. Petitioners likewise contend that they should be able to deduct lease and insurance payments for the business use of one of their personal vehicles in Chicago. Petitioners do not dispute that Mr. Edwards' principal place of business was in Trinidad and Tobago and therefore it is his appropriate "tax home" for the purposes of section 162. Consequently, Mr. Edwards must then have traveled to Chicago, his

**[\*19]** residential home, in pursuit of his trade or business in order for his related travel expenses to be deductible.

In his brief Mr. Edwards contended for the first time that he provided services for clients in the United States during tax year 2007 and therefore had a business purpose for his trips to Chicago. However, this assertion is directly contradicted by Mr. Edwards' own testimony at trial as well as his stipulation that he did not have any clients in the United States during the year at issue. Mr. Edwards has likewise produced no substantive evidence of having clients in the United States during tax year 2007.

Mr. Edwards also alleges in his reply brief that he made frequent trips to the United States to procure business equipment, furniture, and supplies for Opus. Similarly this claim is unsupported by any testimony, much less documentary evidence, as the merchandise receipts provided reflect items ordered not from Chicago but from other locations such as New York and Texas. Accordingly, petitioners have failed to show that the expenses incurred for airfare between Chicago and Trinidad and Tobago were in pursuit of a trade or business rather than commuting expenses resulting from a personal choice to maintain his residence in Chicago. Petitioners have likewise failed to show a business purpose

**[*20]** for expenses relating to the use of their personal vehicle and the use of a car service to transport Mr. Edwards to and from the airport in Chicago.

Even if petitioners were found to have satisfied the requirements to deduct their travel expenses under section 162, they still have not complied with the heightened substantiation requirements of section 274. As substantiation of the claimed travel expenses, Mr. Edwards introduced handwritten calendar summary statements of 29 alleged flights to and from unknown destinations. However, these statements were not prepared contemporaneously with the travel and do not include pertinent information such as the date, the origin and destination cities, or the business purpose of the travel.[7]

Petitioners also failed to provide credit card statements for the majority of the flights listed in the summary exhibit to show that they actually incurred these expenses. The credit card statements provided likewise do not specify the origin and destination cities or the names of the passengers for any flights beyond those respondent already allowed for tax year 2007.

---

[7]In addition to travel between the United States and Trinidad and Tobago, Mr. Edwards asserts that some of the travel expenses were for a trip to Hong Kong through his Northwestern M.B.A. program. Petitioners have similarly failed to provide a business purpose relevant to Opus for these expenses.

**[*21]** With respect to the car service, petitioners provided credit card statements showing payments to a private driving service but, outside of Mr. Edwards' testimony, did not provide any log documenting the expenses or demonstrating a business purpose for them. Petitioners also failed to demonstrate a business purpose for the use of their personal vehicle in Chicago, much less an accurate log of the vehicle's use or a calculation of what percentage of its use was dedicated to business purposes.

Respondent has conceded some of the travel expenses related to hotels in Trinidad and Tobago. The Court finds that petitioners have failed to provide sufficient substantiation with respect to the remainder. Accordingly, petitioners are not entitled to deduct Schedule C travel expenses in an amount greater than that respondent previously allowed for tax year 2007.

B. Contract Labor Expenses

As stated above, section 6001 requires taxpayers to keep records sufficient to establish the amounts of their deductions. See also sec. 1.6001-1(a), Income Tax Regs. Receipts, canceled checks, credit card statements, and corroborating bank statements can show that business expenses were paid. See Fleming v. Commissioner, T.C. Memo. 2010-60. Furthermore, the Court has consistently required taxpayers to produce records or receipts to substantiate payments for

[*22] contract labor.  See, e.g., Parker v. Commissioner, T.C. Memo. 2012-357;

Bruns v. Commissioner, T.C. Memo. 2009-168.

At trial petitioners produced a handful of checks and employment contracts

to substantiate their contract labor expenses.  For every contract labor expense for

which petitioners produced both an employment contract and evidence of payment

in accordance with that contract, respondent allowed a deduction.  Respondent

also allowed deductions for contract labor expenses where Mr. Edwards produced

evidence of payment to an independent contractor along with contracts between

Opus and the Government Human Resources Co. of Trinidad and Tobago, which

referred to payments to said independent contractor.

With respect to the remaining contract labor expenses, Mr. Edwards offered

only uncorroborated testimony.  Mr. Edwards failed to provide any additional

employment contracts showing obligations to pay independent contractors or

checks showing evidence of actual payments beyond those for which respondent

previously allowed a deduction.  Most of the alleged independent contractors Mr.

Edwards identified in his testimony and in his evidentiary summary were entirely

uncorroborated by any documentation at all.

Petitioners failed to maintain sufficient records to show that the remaining

contract labor expenses were either incurred or paid.  Petitioners failed to secure

[*23] affidavits or call any of the alleged employees as witnesses to corroborate that they were independent contractors of Opus or that they actually received payments as such. Accordingly, petitioners are not entitled to deduct Schedule C contract labor expenses in an amount greater than that previously allowed for tax year 2007 in respondent's amended amendment to his amended answer conforming the pleadings to the evidence.

C. Other Expenses

On their proposed amended return for tax year 2007, petitioners claimed additional deductions for expenses not reported on their original return. Petitioners later adopted these positions in their pleadings. These additional claims are affirmative issues raised by petitioners, and consequently they bear the burden of proof. Rule 142(a); see also Ackerman v. Commissioner, T.C. Memo. 2009-80. Specifically petitioners raised affirmative issues by claiming additional deductions for office expenses, amortization, and taxes and licenses, as well as an additional deduction for charitable contributions. At trial Mr. Edwards did not testify with specificity to any of these additional expenses, nor did he provide any supporting documentation. Accordingly, petitioners have not met their burden of proof with respect to the affirmative issues raised in their pleadings.

**[\*24]** In the notice of deficiency, respondent set forth his determinations with respect to a number of deductions claimed on petitioners' original return for tax year 2007. Respondent disallowed, completely or in part, claimed deductions for bank charges, deliveries, dues and subscriptions, furniture, interest, postage, telephone, and vehicle expenses. As stated before, petitioners bear the burden of proving that respondent's determinations in the statutory notice of deficiency are incorrect. See Welch v. Helvering, 290 U.S. 111, 115 (1933).

Once again petitioners failed to offer testimony as to any specific reported expense in this category. Petitioners instead produced an unorganized collection of receipts without any indication as to which expenses they were offered to substantiate. Petitioners made no attempt to match up receipts with expenses, much less to make a showing as to whether these expenses were ordinary and necessary to their business. Accordingly, petitioners are not entitled to deduct their remaining reported Schedule C expenses in amounts greater than previously allowed for tax year 2007 in respondent's amended amendment to his amended answer conforming the pleadings to the evidence.

## III. Section 6662(a) Penalty

Section 6662 imposes an accuracy-related penalty equal to 20% of the portion of an underpayment attributable to any substantial understatement of

[*25] income tax or to negligence or disregard of rules or regulations. Sec. 6662(a) and (b)(1) and (2). Under section 7491(c), the Commissioner has the burden of production to show that the imposition of a penalty under section 6662(a) is appropriate. The Commissioner also has the burden of proof as to any increased penalty amounts asserted in his pleadings. See Rule 142(a).

Section 6662(d) defines a "substantial understatement of income tax" as an understatement that exceeds the greater of: (1) 10% of the amount of tax required to be shown on the return or (2) $5,000. "Negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Code, and "disregard" includes any careless, reckless, or intentional disregard of rules or regulations. Sec. 6662(c).

Petitioners' income tax due for tax year 2007, as updated in respondent's amended amendment to amended answer, is $99,636. On their filed Federal income tax return for 2007, petitioners reported tax due of $7,749. Petitioners' understatement was therefore $91,887, which exceeds both 10% of the amount required to be shown on the return (10% would be $9,964) and $5,000. Respondent has met both his burden of production in showing that such a penalty is appropriate and his burden of proof with respect to the increased penalty

**[*26]** amounts asserted in his pleadings. Accordingly, petitioners are liable for the accuracy-related penalty under section 6662(a) unless an exception applies.

No penalty will be imposed under section 6662(a) if the taxpayer establishes that he acted with reasonable cause and in good faith. Sec. 6664(c)(1). Circumstances that indicate reasonable cause and good faith include reliance on the advice of a tax professional or an honest misunderstanding of the law that is reasonable in light of all the facts and circumstances. Sec. 1.6664-4(b), Income Tax Regs. The taxpayer has the burden of proving that he acted with reasonable cause and in good faith. Rule 142(a); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). Regulations promulgated under section 6664(c) further provide that the determination of reasonable cause and good faith "is made on a case-by-case basis, taking into account all pertinent facts and circumstances." Sec. 1.6664-4(b)(1), Income Tax Regs.

At trial petitioners alleged that they relied on their accountant in connection with the preparation of their original Federal income tax return for tax year 2007. Mr. Edwards asserted that he told his accountant that he was netting his income but wanted to report all expenses from Opus. Mr. Edwards testified: "I told him this was how much money I netted from the business * * * I have a corporation, the corporation could pay me a salary, I took a salary from the corporation to run

[*27] it. Everything else I, in an ongoing, in a new concern, * * * it was essentially expenses * * * so as far as * * * [accountant] was concerned, my salary from Opus was $50,000." However, this testimony is contradicted by petitioners' stipulation that their return for tax year 2007 was self-prepared. Furthermore, the return itself was signed electronically by petitioners as self-prepared.[8]

Even if petitioners' 2007 tax return was prepared by their accountant as alleged, this would not, in and of itself, establish reasonable cause and good faith for the purposes of section 6662(a). For a taxpayer to show reasonable cause and good faith due to reliance on a tax professional, he must show: (1) the adviser was a competent professional who had sufficient expertise to justify reliance; (2) the taxpayer provided necessary and accurate information to the adviser; and (3) the taxpayer actually relied in good faith on the adviser's judgment. Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002). The taxpayer bears the burden of proof on these issues. Id.

At trial petitioners offered no additional witnesses and no substantive evidence beyond uncorroborated testimony to show that they acted with

---

[8]Moreover, there is no evidence that Opus was actually a corporation, and petitioners reported the Opus net income as income from self-employment.

**[*28]** reasonable cause and good faith in relying on a tax professional.

Accordingly, the penalty under section 6662(a) will be sustained.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.