DAVID A. KELLY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kelly v. Commissioner
Docket No. 13693-90
United States Tax Court
T.C. Memo 1991-605; 1991 Tax Ct. Memo LEXIS 652; 62 T.C.M. (CCH) 1406; T.C.M. (RIA) 91605; December 9, 1991, Filed *652 Decision will be entered under Rule 155. David A. Kelly, pro se. John J. Boyle, for the respondent. PATE, Special Trial Judge. PATE
MEMORANDUM FINDINGS OF FACT AND OPINION This case was assigned pursuant to the provisions of section 7443A(b) and Rules 180, 181, and 182. [1]
Respondent determined a deficiency in petitioner's 1986 Federal income taxes of $ 1,012, and additions to tax for negligence of $ 50.60, plus 50 percent of the interest due on $ 1,012. After concessions by both parties, the issues remaining for our decision are: (1) Whether petitioner may deduct the cost of his exercise equipment as an ordinary and necessary business expense, (2) whether petitioner is entitled to an interest deduction for points and other settlement costs which he incurred in obtaining a home mortgage loan, and (3) whether petitioner is *653 liable for the additions to tax for negligence. David A. Kelly (hereinafter petitioner) timely filed his 1986 Federal income tax return with the Internal Revenue Service Center at Cincinnati, Ohio. He resided in Worthington, Ohio, at the time he filed his petition. Exercise Equipment
Petitioner has worked as a certified public accountant since 1972. In 1986, he was employed by a public accounting firm, Arthur Young & Company (hereinafter Arthur Young), in its Columbus, Ohio, office. His annual salary was $ 47,000. He worked long hours for Arthur Young, averaging ten to twelve hours a day. During the "busy season" (approximately March 1st to April 15th) his hours were even longer. In addition, his employer urged him to attend social functions after business hours in order to obtain new clients and maintain strong business relationships with his existing clients. Petitioner also worked out of his home as a self-employed accountant. During 1986, he devoted a minimum of 500 hours to this practice, much of which was also worked during the "busy season." He reported $ 17,395 in gross receipts from the practice. To maintain his stamina under such a heavy workload, petitioner *654 maintained memberships in two athletic clubs, the Scandinavian Health Club and the Sawmill Athletic Club. However, because of his long hours, often these facilities were not open at the times he wanted to use them. Consequently, petitioner purchased $ 2,787 worth of exercise equipment for his own use. He deducted the cost thereof on Schedule C of his 1986 Federal income tax return, electing to expense the entire cost under section 179. Respondent disallowed the deduction on the grounds that it did not constitute a trade or business expense under section 162. Petitioner contends that the cost of his exercise equipment qualifies as an ordinary and necessary business expense because exercise was crucial to his maintaining a high level of work output and, therefore, was necessary to carry out his duties at both Arthur Young and his own accounting practice. In general, a taxpayer may deduct ordinary and necessary expenses incurred in carrying on a trade or business. Sec. 162(a). This includes (if a proper election is made by the taxpayer) a deduction (within certain limitations) under section 179, for the cost of property acquired by purchase for use in the active conduct of a *655 trade or business. However, no deduction is allowed a taxpayer for personal, living, or family expenses. Section 262. In evaluating whether certain expenses are personal or qualify as business expenses under section 162, the courts have found that some expenses are so "inherently personal" that they almost invariably are held to come within the ambit of section 262. [2], affd. . As explained in : the common thread which seems to bind the cases together is the notion that some expenses are so inherently personal that they simply cannot qualify for section 162 treatment irrespective of the role played by such expenditures in the overall scheme of the taxpayers' trade or business. * * * "A businessman's suit, a saleslady's dress, the accountant's glasses are necessary for their business but the necessity does not overcome the personal nature of these items and make them a deductible business expense. * * *" [Quoting ; *656 fn. ref. omitted.]
This rule applies even if the effects of the expenditures incidentally benefit the employer. , affd. . Therefore, we have held that the costs incurred in maintaining stamina and good health are inherently personal expenditures. See, e.g., (health insurance); (hearing aid); (gym clothes and bag). Petitioner used the exercise equipment he purchased exclusively for his own exercise regimen. He argues that the use of such equipment resulted in increasing his stamina which, in turn, enabled him to work longer *657 hours. Yet, he was also personally benefitted by maintaining better health. Because the cost of maintaining good health is one of those expenses which is so "inherently personal" that it simply cannot qualify as a business expense within section 162, such cost is not deductible. Alternatively, petitioner argues that he is entitled to the deduction because, as an "employer" in his own accounting practice, he expended money providing recreational facilities for himself as an "employee." However, the fact of the matter is that petitioner was not an "employer" and did not "employ" himself in his own accounting practice. Accordingly, we hold that petitioner may not deduct the cost of his exercise equipment as a business expense under section 162. Costs of Obtaining Mortgage on Residence
In May, 1983 petitioner contracted with Ryland Homes, a construction company, to build his residence. One of the reasons petitioner chose Ryland was the attractive financing package they offered. However, due to delays caused by a variance hearing, the loan commitment petitioner obtained through Ryland expired prior to the completion of construction. Thereafter, petitioner shopped for a new *658 mortgage loan. On December 16, 1983, he borrowed $ 128,000 from Diamond Savings and Loan (hereinafter the Diamond loan). The Diamond loan was payable over 30 years, was secured by a mortgage on his residence, and called for an interest rate of 11.75-percent for the first three years. The rate was subject to change on March 1, 1987, and every three years thereafter. Petitioner was not content with the Diamond loan; he viewed the interest rate as relatively high and did not like the idea of variable payments over the life of the loan. Consequently, he sought a new loan to secure a lower interest rate and fix the amount of the payments. In June 1986, petitioner obtained a loan for $ 125,000 from Ameritrust Company National Association (hereinafter the Ameritrust loan). This loan was amortizable over 15 years and called for a fixed interest rate of 9.5-percent. Petitioner paid off the Diamond loan with the proceeds of the Ameritrust loan. To obtain the Ameritrust loan, petitioner paid a total of $ 2,466 in settlement charges. These settlement charges included a loan discount of $ 1,250, prepaid interest covering the period June 23, 1986 to July 1, 1986, of $ 264, and title insurance *659 and miscellaneous fees of $ 952. He deducted the total amount of the settlement charges ($ 2,466) as interest expense on his 1986 income tax return. Respondent disallowed $ 2,386 of petitioner's interest expense deduction on the grounds that the settlement charges constitute nondeductible closing costs. At trial, the parties agreed that the $ 1,250 loan discount should be treated as "points." The term "points" refers to a fee, generally equal to a percentage of the total loan, which is paid to the lending institution to lower the interest rate. Therefore, points are considered to be prepaid interest and respondent admits that petitioner may amortize the $ 1,250 in points over the 15 year life of the loan. [3] The deductibility of the balance of the settlement charges is still in issue. Section *660 163(a) allows a deduction in full for "interest paid or accrued within the taxable year on indebtedness." For Federal income tax purposes, interest generally is defined as "compensation for the use or forbearance of money." . With regard to prepaid interest, however, section 461(g)(1) provides that: (a) IN GENERAL. -- If the taxable income of the taxpayer is computed under the cash receipts and disbursements method of accounting, interest paid by the taxpayer which, * * *, is properly allocable to any period -- (A) with respect to which the interest represents a charge for the use or forbearance of money, and (B) which is after the close of the taxable year in which paid,
shall be charged to capital account and shall be treated as paid in the period to which so allocable.
Therefore, a cash basis taxpayer must amortize prepaid interest over the life of his loan just as if he were on the accrual method of accounting. However, section 461(g)(2) provides an exception to that rule. It allows a taxpayer to deduct: points paid in respect of any indebtedness incurred in connection with the purchase or *661 improvement of, and secured by, the principal residence of the taxpayer * * *.
Petitioner contends that he may deduct the entire amount of the loan discount in 1986 because it was paid "in connection with the purchase" of his "principal residence." Respondent maintains that the loan discount must be amortized over the life of the loan because the Ameritrust loan was not used to purchase or improve petitioner's principal residence, but rather to pay off the Diamond loan. Petitioner cites , revg. , in support of his position. In that case, the Eighth Circuit held that points incurred in refinancing a short-term (3 year) mortgage loan on a residence were incurred "in connection with" the purchase of the taxpayer's residence and therefore deductible. However, the court emphasized that the taxpayers did not refinance their existing indebtedness in order to lower their interest rate or to achieve some other financial goal not connected "directly" with home ownership. Rather, under the facts of that case, it found that the taxpayers acquired their new mortgage in order to *662 extinguish short-term loans. Thus, it concluded that the refinancing was an "integrated step" in, and was thus "in connection with" the purchase of their home. . The facts surrounding petitioner's loan transaction are distinguishable from those in Huntsman. The Diamond loan was not a short-term loan, but was payable over 30 years. Because it did not have to be paid off within a short period of time, petitioner was not required to obtain the Ameritrust loan to finalize the purchase of his residence. Rather, he obtained the Ameritrust loan because he wished to have a fixed payment and to lower his interest rate. Consequently, we hold that petitioner may not deduct the points he incurred in obtaining his Ameritrust loan. Cf. , affd. without published opinion . With regard to the prepaid interest of $ 264, such interest covered a period which expired during the year in issue. Therefore, although this amount constituted prepaid interest at the time of the closing (and, therefore, comes within the provisions *663 of section 461(g)(1)), because the period for which the interest was paid both began and ended within the year in issue, such interest is deductible in 1986. Cf. . With regard to the various fees and title insurance charged petitioner to obtain the Ameritrust loan, those costs are not interest but are charges for services rendered in connection with obtaining the loan. , affd. without published opinion ; . Accordingly, such charges are not deductible as interest. Negligence
Respondent determined that petitioner is liable for additions to tax for negligence under section 6653(a)(1)(A) and section 6653(a)(1)(B). Section 6653(a)(1)(A) provides that, if any portion of an underpayment of tax is due to negligence or intentional disregard of rules or regulations, an amount equal to 5-percent of the underpayment is added to the tax. Section 6653(a)(1)(B) provides for an addition to tax equal to 50 percent of the interest on the portion of *664 the underpayment attributable to negligence. Negligence has been defined as the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. , affg. ; , cert. denied ; . Because an addition to tax under section 6653(a) is presumptively correct, the taxpayer bears the burden of establishing that respondent's determination was erroneous. , affg. ; ; . At trial, respondent conceded that petitioner was not negligent with regard to that portion of the deficiency arising from the disallowance of the interest deduction. Thus, the only issue remaining for our decision is whether petitioner was *665 negligent in deducting the cost of his exercise equipment. Petitioner is an experienced accountant and somewhat familiar with the income tax laws. He claimed the deduction for exercise equipment on his 1986 Federal income tax return after considering the parameters of section 162. He believed that section 162's language was broad enough to encompass the deduction. Therefore, although we have held against him, we do not view petitioner's deduction of his exercise equipment as constituting "negligence." Accordingly, we hold that petitioner is not liable for the additions to tax for negligence under section 6653(a). Based on the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code as amended and in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Section 262 has been held to take precedence over section 162. , affd. .↩
3. We assume that the $ 80 difference between the settlement charges deducted by petitioner on his income tax return ($ 2,466) and the amount disallowed by respondent ($ 2,386) reflects the allowance of such amortization.↩