T.C. Memo. 1999-283


UNITED STATES TAX COURT


THOMAS J. MITCHELL AND JANICE M. MITCHELL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 14056-98.                    Filed August 25, 1999.


<u>Arthur G. Jaros, Jr.</u>, for petitioners.

<u>William I. Miller</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, <u>Judge</u>:  Petitioners petitioned the Court to
redetermine Federal income tax deficiencies of $13,517 for 1994
and $14,407 for 1995 and accuracy-related penalties of $2,703 for
1994 and $2,881 for 1995 for substantial understatement of income
tax.  Following concessions, we must decide whether petitioners

may deduct the traveling expenses at issue.  We hold they may.[1]
Unless otherwise indicated, section references are to the
Internal Revenue Code in effect for the subject years.  Rule
references are to the Tax Court Rules of Practice and Procedure.
References to petitioner in the singular are to Thomas J.
Mitchell.

FINDINGS OF FACT

Some of the facts have been stipulated.  The stipulation of
facts and the exhibits submitted therewith are incorporated
herein by this reference.  Petitioners resided in Lockport,
Illinois, when their petition was filed.  They were husband and
wife during the relevant years, and they filed joint Federal
income tax returns for those years.

Petitioner was born in December 1933, and he has worked and
lived in the Chicago, Illinois, area for most of his life.  After
living outside of the Chicago area for a brief period of time
before 1990, he moved in 1990 back to the Chicago area, settling
in a suburb called Orland Park, Illinois.  While living in Orland
Park, he began to consult as an independent contractor for a
printing company in New York, New York.  He worked out of his
home, using a room that he had set up as his business office.

---

[1] Our holding on this issue also means that petitioners are
not liable for the accuracy-related penalties in dispute, all of
which relate solely to the traveling expenses.

That room had a dedicated phone line, a fax machine, an answering machine, a desk, and file cabinets.

American Collegiate Network (ACN) is a magazine publisher based in Los Angeles, California. ACN hired Scott Schmidt in 1991 to be its publisher, and it retained petitioner for 4 months primarily to advise Mr. Schmidt and it on ACN's printing process. After the 4 months were over, ACN retained petitioner for another "short period of time" to advise it and Mr. Schmidt on a new concept for its magazine.

Mr. Schmidt was abruptly fired in 1992, and ACN hired Gayle Sweetland as its new publisher. Ms. Sweetland had no experience as a magazine publisher, and ACN retained petitioner on an as needed basis to advise her and it for a period of time of not more than 1 year. During 1992, petitioner, while in California, advised Ms. Sweetland on the intricacies of publishing, and he advised ACN on its printing process. He also, from his home in Orland Park, advised ACN on the circulation of its magazine. Petitioner worked for ACN in California for approximately 130 days in 1992. Approximately 42 days were spent at ACN's print shop in Riverside, California, and the remaining days were spent 70 miles away at ACN's offices in Century City, California.

In early 1993, ACN retained petitioner to perform a marketing study from his house in Orland Park and to continue advising it on an as needed basis. The study would take less than 1 year, and, while working on it, petitioner also traveled

to Riverside to advise ACN on its printing process, and he advised ACN on its magazine's circulation from his home in Orland Park. Also during that time, petitioner trained an ACN employee in Century City to supervise the printing and circulation of ACN's magazine. Petitioner worked for ACN in California for approximately 130 days during 1993.

Petitioner expected his engagement with ACN to stop after he had completed the marketing study, and, when the study was over, he confirmed with Ms. Sweetland that his work for ACN was at or near its end. A few months later, in early 1994, Ms. Sweetland was diagnosed with breast cancer, and ACN retained petitioner to advise it on its operations on an as needed basis while Ms. Sweetland was undergoing medical treatment. During 1994, petitioner substituted for Ms. Sweetland at meetings in Century City, and he advised ACN on the circulation of ACN's magazine from his home in Orland Park. He was in California for 155 days during 1994, and he worked for ACN on each of those days; he worked 123 days in Century City and 32 days in Riverside. He worked for ACN in Orland Park for 70 days in 1994.

At the end of 1994, when it appeared that Ms. Sweetland's medical treatment was completed successfully, ACN and petitioner agreed that petitioner's work for ACN in California was complete and that any more consulting services required by him could be provided by phone from his Orland Park home. A few months later, Ms. Sweetland's cancer metastasized, and ACN asked petitioner to

resume helping it in California on an as needed basis. Petitioner accepted.  In the middle of 1995, ACN changed its print shop to one in Stillwater, Oklahoma, and petitioner traveled to Stillwater to advise ACN on its printing process. Petitioner was in California for 113 days during 1995, and he worked for ACN on each of those days.  He worked in Riverside on 18 days and in Century City on 95 days.  He worked for ACN on 90 days while in Orland Park and on 21 days while in Stillwater.

Ms. Sweetland died in 1996.  Three days later, ACN told petitioner that his services in Century City were no longer needed.  ACN told petitioner that it wanted him to continue advising it on its printing process.

During 1994 and 1995, petitioner traveled between Orland Park and California about 14 times (all between January to May or July to November), and he rented a small one-bedroom apartment in Century City in which he placed minimal furnishings.  Petitioner deducted his travel and apartment expenses on his 1994 and 1995 tax returns.  Respondent disallowed the following expenses (referred hereinafter as traveling expenses):

|  | 1994 | 1995 |
| --- | --- | --- |
| Apartment | $14,950 | $15,705 |
| Travel | 14,050 | 15,251 |
| Meals and entertainment | 4,805 | 5,260 |
| Utilities | 1,015 | 1,243 |
| Insurance | 717 | 1,110 |
| Total | 35,537 | 38,569 |

Following concessions, the traveling expenses at issue are as follows:

|  | 1994 | 1995 |
|---|---|---|
| Apartment | $14,950 | $15,705 |
| Travel | 14,050 | 12,501 |
| Meals and entertainment | 4,805 | 3,360 |
| Utilities | 1,015 | 1,243 |

All of the disputed expenses for travel and for meals and entertainment relate to petitioner's travel between Orland Park and California. The cost of the apartment was less than the amount that petitioner would have had to pay had he stayed in a hotel room during his time in California.

Throughout all of the relevant years, petitioner was registered to vote in Illinois, he registered his car in Illinois, and he maintained his only checking account in Illinois. Petitioner's only connection to California was that he performed services there.

During the relevant years, ACN did not restrict petitioner from providing additional consulting services to other companies, and it did not give him an office at its Century City location. Petitioner offered his consulting services to other prospective clients during those years.

OPINION

We must decide whether petitioners may deduct the traveling expenses in dispute. Petitioners contend that they may because petitioner was away from his tax home in Orland Park while

temporarily working in Century City and Riverside. Respondent contends that they may not because petitioner's tax home was Century City. Petitioners bear the burden of proving that petitioner's tax home was not in Century City. See rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Daly v. Commissioner, 72 T.C. 190, 197 (1979), affd. 662 F.2d 253 (4th Cir. 1981).

A taxpayer ordinarily may not deduct a personal expense. See sec. 262. A taxpayer may deduct an expense, however, to the extent that it is: (1) A reasonable traveling expense (e.g., lodging, transportation, fares, and food), (2) incurred while away from home, and (3) an ordinary and necessary expense incurred in pursuit of a trade or business. See sec. 162(a)(2); Commissioner v. Flowers, 326 U.S. 465, 470 (1946). The purpose behind this deduction is to alleviate the burden falling upon a taxpayer whose business requires that he or she incur duplicate living expenses. See Tucker v. Commissioner, 55 T.C. 783, 786 (1971); Kroll v. Commissioner, 49 T.C. 557, 562 (1968). Whether the taxpayer satisfies the three conditions necessary for this deduction is purely a question of fact. See Commissioner v. Flowers, supra at 470; see also Wills v. Commissioner, 411 F.2d 537, 540 (9th Cir. 1969), affg. 48 T.C. 308 (1967).

The parties dispute only the situs of petitioner's tax home; thus, we limit our inquiry to that question. The U.S. Supreme Court has held that a taxpayer may not deduct the expenses of

traveling to and living at his place of employment unless the traveling is required by the exigencies of his employment, rather than by his "personal conveniences and necessities". Commissioner v. Flowers, supra at 474. There, the taxpayer's principal place of employment was Mobile, Alabama, and the taxpayer traveled to Mobile from his home in Jackson, Mississippi, whenever his work required him to be in Mobile. The Court found that this travel was not required by the exigencies of his employment, but resulted from his personal choice to live in Jackson. Since his principal employment was in Mobile, he could reasonably have been expected to move there, which would have made this travel unnecessary.

The principles articulated in Flowers have subsequently been applied in other cases. From these cases, we understand that a taxpayer's principal place of business generally is his or her tax home, although his or her residence is in another city or is not in the same area as the place of employment. See Mitchell v. Commissioner, 74 T.C. 578, 581 (1980); Kroll v. Commissioner, supra at 561-562. The rule is different, however, where a taxpayer's employment in another area is temporary as opposed to indefinite. See Peurifoy v. Commissioner, 358 U.S. 59 (1958); Horton v. Commissioner, 86 T.C. 589, 593 (1986). A taxpayer's tax home is his or her residence if the employment is temporary; the taxpayer's presence at the other location is considered to be away from home. See Kroll v. Commissioner, supra at 562. A

taxpayer's tax home is the location of his or her employment if the employment is indefinite or permanent; the taxpayer's presence at a second location is not considered away from home. See id. at 562. Employment is temporary if it is foreseeable that the employment will be terminated within a short period of time. See Mitchell v. Commissioner, supra at 581. Employment that starts as temporary can later become indefinite, see Chimento v. Commissioner, 52 T.C. 1067, 1073 (1969), affd. 438 F.2d 643 (3d Cir. 1971), and, when that occurs, the location of the taxpayer's employment becomes his or her home, see Kroll v. Commissioner, supra at 562. A "taxpayer shall not be treated as being temporarily away from home during any period of employment if such period exceeds 1 year." Sec. 162(a).

We find from the facts at hand that petitioner's tax home during 1994 and 1995 was in Orland Park. He lived in Orland Park during those years, and his consulting practice was based in that city. His travel to Century City was dictated by the exigencies of his work for his client, ACN, and not from his personal choice to live in Century City. He spent more time working during each of the subject years in Orland Park than he did in Century City, or, for that matter, in California as a whole. His only connection to Century City was the fact that he provided services there on an as needed basis, and he was able to, and did, actively seek other engagements that he would perform from his office in Orland Park.

Nor was petitioner's tenure in Century City indefinite; it was temporary. Although respondent notes correctly that petitioner's work in and around Century City occurred in at least 5 different years, and that section 162(a) provides that a "taxpayer * * * [is not] temporarily away from home during any period of employment * * * [that] exceeds 1 year", we conclude that petitioner's work for ACN in California did not exceed the 1-year period referred to in the statute. Petitioner's work for ACN was on again and off again throughout the relevant years, with ACN continually renewing his engagement with it because of unexpected happenings. Moreover, petitioner's travel to ACN's offices in Century City and to the printing plants in Riverside and Stillwater was incident to the fact that his employment was based in Orland Park and that he was providing his consulting services out of Orland Park. Merely because an independent contractor may return to the same general location in more than 1 year does not mean, as respondent asks us to hold, that the independent contractor is employed in that general location on an indefinite basis. This is especially true here where petitioner was not restricted to working solely for ACN and actually sought other engagements for which he could provide his consulting services contemporaneously with the services which he provided to ACN.

We hold that petitioner's tax home was in Orland Park and, accordingly, that petitioners are entitled to deduct all of the

traveling expenses in issue.  In so holding, we have considered all arguments made by the parties and, to the extent not discussed above, find them to be irrelevant or without merit.

To reflect concessions by the parties,

<u>Decision will be entered</u>

<u>under Rule 155</u>.