148 T.C. No. 6

UNITED STATES TAX COURT

RICHARD LILJEBERG, ET AL.,[1] Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 20796-14, 22042-14,          Filed March 16, 2017.
                23061-14.

Ps are nonresident aliens. In 2012 they were full-time students at foreign universities when they participated in the U.S. Department of State Summer Work Travel Program (SWTP). They came to the United States for no more than four months over the summer to participate in cultural exchange, travel domestically, and work in temporary or seasonal jobs. Ps sought to deduct expenses they paid in connection with the SWTP, including the costs of airfare, program and visa fees, travel health insurance, and meals and entertainment. R denied Ps' claimed deductions, though he has since conceded the deductibility of the program and visa fees. Ps in turn have conceded that the fees paid by one of them in 2011 are not deductible for 2012.

---

[1]Cases of the following petitioners are consolidated herewith: Anna V. Zolotareva, docket No. 22042-14; and Enda Conway, docket No. 23061-14.

Held:  Ps may not deduct their expenses for airfare and meals and entertainment paid in connection with their participation in the SWTP because they were not "away from home in the pursuit of a trade or business" for purposes of I.R.C. sec. 162(a)(2).  Hantzis v. Commissioner, 638 F.2d 248 (1st Cir. 1981), rev'g T.C. Memo. 1979-299, followed.

Held, further, Ps may not deduct their expenses for travel health insurance under I.R.C. sec. 162(a)(2) but may deduct those expenses under I.R.C. sec. 213(a) to the extent they satisfy its requirements.

Steven S. Brown, Denis John Conlon, and Leigh David Roadman, for petitioners.

Elizabeth S. McBrearty, for respondent.

OPINION

LARO, Judge:  Petitioners are foreign nationals and are nonresident aliens for Federal income tax purposes.  These cases arise out of their participation in the Summer Work Travel Program (SWTP), which is part of the U.S. Department of State Exchange Visitor Program (EVP).  The cases were consolidated for trial,

briefing, and opinion and were submitted fully stipulated for decision without trial. See Rule 122.[2]

Respondent determined deficiencies in petitioners' Federal income tax for tax year 2012 as follows:

| Petitioner | Docket No. | Amount |
|---|---|---|
| Richard Liljeberg | 20796-14 | $54 |
| Anna V. Zolotareva | 22042-14 | 161 |
| Enda Conway | 23061-14 | 401 |

At issue in these cases of first impression is whether petitioners are entitled to itemized deductions (not otherwise conceded by respondent) under section 162 for certain unreimbursed employee expenses they paid in 2012 in connection with their participation in the SWTP. We hold that they are not, except inasmuch as their expenses for travel health insurance may be deductible under section 213(a).

Background

I. Overview

The parties submitted the cases fully stipulated under Rule 122. The stipulations of fact and the facts drawn from stipulated exhibits are incorporated

---

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

herein.  Since none of petitioners had a legal residence in the United States as of the time their petitions were filed with the Court, these cases are appealable to the Court of Appeals for the District of Columbia Circuit absent stipulation of the parties to the contrary.  See sec. 7482(b)(1) (flush language).

II.    Summer Work Travel Program

The SWTP is a category of the EVP administered by the U.S. Department of State.  The EVP was authorized by the Mutual Educational and Cultural Exchange Act of 1961, Pub. L. No. 87-256, sec. 102, 75 Stat. at 527-529 (codified as amended at 22 U.S.C. sec. 2452 (2012)), and is governed by 22 C.F.R. ch. I, subch. G, pt. 62.  Since the Department of State regulations governing the EVP were substantially modified effective January 5, 2015, Public Notice, 79 Fed. Reg. 60,294 (Oct. 6, 2014), we look to the regulations as they existed in 2012, see, e.g., Anthes v. Commissioner, 81 T.C. 1, 7 (1983) ("We must apply the law as in effect during the taxable year in issue."), aff'd without published opinion, 740 F.2d 953 (1st Cir. 1984).

The EVP was established "to increase mutual understanding between the people of the United States and the people of other countries by means of educational and cultural exchanges * * * [to] assist the Department of State in furthering the foreign policy objectives of the United States."  22 C.F.R. sec.

62.1(a) (2013).  The Department of State facilitates the program by designating sponsors--which can be public or private entities--"to provide foreign nationals with opportunities to participate in educational and cultural programs in the United States and return home to share their experiences".  Id. sec. 62.1(b). Sponsors must satisfy a host of obligations, including, among others:  (1) maintaining their legal status and accreditation or licensure; (2) committing to provide accurate information to the Government, the public, and exchange visitors; (3) maintaining financial capability to meet their financial obligations; (4) ensuring adequate staffing and support services to administer the exchange program; and (5) appointing specific employees to handle the program.  Id. sec. 62.9.  Sponsors also must ensure that exchange visitors have sickness and accident insurance throughout the period in which they participate in the exchange program.  Id. sec. 62.14(a).

Exchange visitors enter the United States on nonimmigrant visas issued under 8 U.S.C. sec. 1101(a)(15)(J) (2012), also known as "J visas".  22 C.F.R. sec. 62.1(b); see also 22 C.F.R. sec. 62.2 (2013).  A J visa is issued to "an alien having a residence in a foreign country which he has no intention of abandoning" and who meets certain other criteria.  8 U.S.C. sec. 1101(a)(15)(J).

The SWTP is one of several programs under the umbrella of the EVP. To be eligible for the SWTP, aliens must be foreign nationals proficient in English, who "demonstrate their intention to participate in the cultural aspects of the * * * [SWTP]" and "are enrolled full-time and pursuing studies at accredited post-secondary, classroom-based, academic institutions physically located outside of the United States and have successfully completed at least one semester, or equivalent, of post-secondary academic study." 22 C.F.R. sec. 62.32(d) (2013).

The purpose of the SWTP is "to provide foreign college and university students with opportunities to interact with U.S. citizens, experience U.S. culture while sharing their own cultures with Americans they meet, travel in the United States, and work in jobs that require minimal training and are seasonal or temporary in order to earn funds to help defray a portion of their expenses." Id. sec. 62.32(b). Employment is seasonal when it "is tied to a certain time of the year by an event or pattern and requires labor levels above and beyond existing worker levels." Id. Employment is temporary "when an employer's need * * * is a one-time occurrence, a peak load need, or an intermittent need." Id.

Foreign nationals may participate in the SWTP for no longer than four months during the extended break between academic years. Id. sec. 62.32(c). Sponsors participating in the SWTP, in addition to fulfilling general requirements

under the EVP, must (1) conduct adequate participant screening and selection; (2) provide program participants with certain orientation materials; (3) ensure that program participants have opportunities to work alongside U.S. citizens and engage in cultural activities outside of work; (4) place participants in appropriate positions; (5) ensure that participants are compensated appropriately; (6) maintain at least monthly personal contacts with program participants and provide assistance to participants as needed; (7) institute adequate internal controls within their own organizations; (8) properly vet any third-party entities used by them to fulfill the program's requirements; (9) ensure host employer cooperation; and (10) comply with specified reporting requirements. Id. sec. 62.32(d)-(p).

An exchange visitor's participation in the exchange program can be terminated early if he, among other things, (1) does not pursue the activities for which he was admitted to the United States, (2) is unable to continue his participation, or (3) violates the program's rules. Id. sec. 62.40(a). The exchange visitor's participation likewise terminates if he "engages in unauthorized employment". Id. sec. 62.40(b).

III.   Petitioner Richard Liljeberg

   A.   Background

When the petition in his case was filed Richard Liljeberg lived in, and was a citizen of, the Republic of Finland.  During the year at issue Mr. Liljeberg was a full-time student at the Haaga-Helia University of Applied Sciences in Helsinki, Finland.  He lived with his mother before he came to the United States in 2012, but upon his return to Finland he lived alone in a rental home.  Throughout 2012 Mr. Liljeberg held a driver's license issued in Finland, owned a car in that country, and was registered to vote there.  He also received mail and owned a bank account in Finland.  Before coming to the United States in 2012 Mr. Liljeberg worked at a company called ISS Security while simultaneously attending school.  He did not return to work at ISS Security upon returning to Finland.

   B.   Work and Travel in the United States

Pursuant to the SWTP, Mr. Liljeberg entered the United States on May 21, 2012, and departed on September 15, 2012.  During most of his time in the United States Mr. Liljeberg worked as a lifeguard at Noah's Ark in the Wisconsin Dells in the State of Wisconsin, where he earned $4,403.72 in wages.  Upon concluding his employment, but before his return to Finland, Mr. Liljeberg traveled to Chicago,

Washington, D.C., and New York City. He has not returned to the United States since leaving the country on September 15, 2012.

### C. Tax Return

Mr. Liljeberg filed a Form 1040NR, U.S. Nonresident Alien Income Tax Return, for tax year 2012, dated March 4, 2013. On his tax return he deducted $1,700 in unreimbursed employee expenses. Of that amount, Mr. Liljeberg paid $995 for airfare to and from the United States, $500 for the cost of the program, $35 for the cost of his J visa, and $170 for insurance in the year 2012 in connection with his participation in the SWTP.

### D. Notice of Deficiency

Respondent issued a notice of deficiency to Mr. Liljeberg on April 4, 2014, for the 2012 tax year. Mr. Liljeberg's miscellaneous itemized deductions were reduced by $1,700, reflecting respondent's denial of his claimed deductions for travel and living expenses. Accounting for the floor equal to 2% of adjusted gross income, see sec. 67(a), the final adjustment was $1,612, resulting in the determination of a $54 deficiency in Federal income tax due from Mr. Liljeberg.

### E. Tax Treaty Not Applicable

The parties agree that the United States' tax treaty with Finland does not relieve Mr. Liljeberg of his U.S. income tax obligations, and he has claimed no

relief thereunder. <u>See</u> Convention for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income and on Capital, Fin.-U.S., art. 15, para. 1, Sept. 21, 1989, Tax Treaties (CCH) para. 2945.01.

IV.    <u>Petitioner Anna Zolotareva</u>

A.    <u>Background</u>

When the petition in her case was filed Anna Zolotareva lived in, and was a citizen of, the Russian Federation. During the year at issue Ms. Zolotareva was a full-time student at the Ulyanovsk Pedagogical University in Russia. She lived with her parents before she came to the United States in 2012 and lived with them when she returned to Russia later in the year. Ms. Zolotareva's parents paid the costs of maintaining their home, including rent and utilities. Throughout 2012 Ms. Zolotareva held a driver's license issued in Russia and was registered to vote there. However, she did not work in Russia at any time during 2012.

B.    <u>Work and Travel in the United States</u>

Pursuant to the SWTP, Ms. Zolotareva entered the United States on May 28, 2012, and departed on September 9, 2012. During most of her time in the United States Ms. Zolotareva worked as a housekeeper at the Roche Harbor Resort on San Juan Island in the State of Washington, where she earned $5,410.60 in wages. Upon concluding her employment, but before her return to Russia, Ms. Zolotareva

traveled to Los Angeles and New York City. She has not returned to the United States since leaving the country on September 9, 2012.

### C. Tax Return

Ms. Zolotareva filed a Form 1040NR for tax year 2012, dated February 19, 2013. On her tax return she deducted $2,610 in unreimbursed employee expenses. Of that amount, Ms. Zolotareva paid $1,510 as program fees and $1,100 as travel expenses, including airfare to and from the United States, an extension on travel medical insurance, and J visa fees. Ms. Zolotareva has conceded, however, that the $1,510 in program fees is not deductible for 2012 since it was paid in 2011.

### D. Notice of Deficiency

Respondent issued a notice of deficiency to Ms. Zolotareva on April 18, 2014, for the 2012 tax year. Ms. Zolotareva's miscellaneous itemized deductions were reduced by $2,610, reflecting respondent's denial of her claimed deductions for travel and living expenses. After application of the 2% floor, see sec. 67(a), the final adjustment was $2,502, resulting in the determination of a $161 deficiency in Federal income tax due from Ms. Zolotareva.

### E. Tax Treaty Not Applicable

The parties agree that the United States' tax treaty with Russia does not relieve Ms. Zolotareva of her U.S. income tax obligations, and she has claimed no

relief thereunder.  See Convention for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income and Capital, Russ.-U.S., art. 14, para. 1, June 17, 1992, Tax Treaties (CCH) para. 8003.

V.    Petitioner Enda Conway

A.    Background

When the petition in his case was filed Enda Conway lived in, and was a citizen of, Ireland.  During the year at issue Mr. Conway was a full-time student at University College Dublin in Ireland.  While in the United States, Mr. Conway continued to pay his phone bill and gym membership in Ireland and sent money to his mother to maintain his home there.  Throughout 2012 Mr. Conway held a driver's license issued in Ireland, owned a car in that country, and was registered to vote there.  He also received mail and owned a bank account in Ireland.  However, he did not work there at any time during 2012.

B.    Work and Travel in the United States

Pursuant to the SWTP Mr. Conway entered the United States on June 6, 2012, and departed on September 3, 2012.  During his time in the United States Mr. Conway worked as a server at Gosman's Dock Restaurant in Montauk, New York, where he earned $14,839.76 in wages.  Since leaving the country on September 3, 2012, Mr. Conway has been back to the United States once.

C. <u>Tax Return</u>

Mr. Conway filed a Form 1040NR for tax year 2012, dated February 21, 2013. On his tax return he deducted unreimbursed employee expenses of $3,157. Of that amount, Mr. Conway claimed a deduction of $2,000 for travel expenses, including the costs of airfare, a program fee, and medical insurance. He also claimed a deduction for meals and entertainment expenses of $1,157 (50% of $2,314, a number calculated by multiplying a per diem rate of $39 by 89 to reflect the total days spent in the United States and further multiplying the product by two-thirds to estimate the number of working days).[3]

D. <u>Notice of Deficiency</u>

Respondent issued a notice of deficiency to Mr. Conway on April 29, 2014, for the 2012 tax year. Mr. Conway's miscellaneous itemized deductions were reduced by $3,157, reflecting respondent's denial of his claimed deductions for travel and living expenses and meals and entertainment. After application of the

---

[3]Petitioners on brief argued that the per diem rate for the location where Mr. Conway worked in 2012 was $71 per day, <u>see</u> Rev. Proc. 2011-47, sec. 4.03, 2011-42 I.R.B. 520, 522, not $39 as claimed on his return, and that he therefore is entitled to a higher deduction. Respondent objects. Since we conclude below that Mr. Conway may not deduct his claimed travel and meals and entertainment expenses, we need not reach the question of their proper amount.

2% floor, see sec. 67(a), the final adjustment was $2,860, resulting in the determination of a $401 deficiency in Federal income tax due from Mr. Conway.

### E. Tax Treaty Not Applicable

The parties agree that the United States' tax treaty with Ireland does not relieve Mr. Conway of his U.S. income tax obligations, and he has claimed no relief thereunder. See Convention for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income and Capital Gains, Ir.-U.S., art. 15, para. 1, July 28, 1997, Tax Treaties (CCH) para. 4401.001.

### Discussion

### I. Overview

In 2012 petitioners were nonresident aliens who arrived in the United States on J visas as exchange program participants and earned wage income during the year. The parties do not dispute that petitioners are taxable in the United States on the income they earned while employed in this country. The parties also agree that petitioners, in working at their respective summer jobs obtained through the SWTP, were engaged in a U.S. trade or business. However, still at issue after the parties' concessions is whether petitioners may deduct certain expenses they paid while in the United States and in traveling to and from the United States to participate in the SWTP. Because petitioners were not "away from home" for

purposes of section 162(a)(2), we hold that they may not, except to the extent that their expenses for travel health insurance satisfy the requirements of section 213.

II.     Legal Background

    A.     Taxation of Nonresident Aliens

Under section 871(b)(1) "[a] nonresident alien individual engaged in trade or business within the United States during the taxable year shall be taxable as provided in section 1 or 55 on his taxable income which is effectively connected with the conduct of a trade or business within the United States." Performance of personal services within the United States is considered the conduct of a trade or business. Sec. 864(b). Aliens present in the country on J visas, among other visa categories, are treated for purposes of section 871 as nonresident alien individuals engaged in a trade or business within the United States, regardless of whether they are in fact so engaged. Sec. 871(c).

    B.     Deductibility of Expenses

For nonresident alien individuals, deductions are allowed "only if and to the extent that they are connected with income which is effectively connected with the conduct of a trade or business within the United States". Sec. 873(a). While personal, living, or family expenses are not deductible, sec. 262(a), one may deduct "traveling expenses (including amounts expended for meals and lodging

other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business", sec. 162(a)(2). A taxpayer may be in the trade or business of being an employee. Primuth v. Commissioner, 54 T.C. 374, 377 (1970); see also O'Malley v. Commissioner, 91 T.C. 352, 363-364 (1988).

For an expense to qualify under section 162(a)(2) it must (1) be ordinary and necessary, (2) have been incurred while the taxpayer was "away from home", and (3) have been incurred in the pursuit of a trade or business. Barone v. Commissioner, 85 T.C. 462, 465 (1985), aff'd without published opinion, 807 F.2d 177 (9th Cir. 1986). We have defined "home" as used in section 162(a)(2) to mean "the vicinity of the taxpayer's principal place of employment and not where his or her personal residence is located." Mitchell v. Commissioner, 74 T.C. 578, 581 (1980). The idea "is to mitigate the burden of the taxpayer who, because of the exigencies of his trade or business, must maintain two places of abode and thereby incur additional and duplicate living expenses." Kroll v. Commissioner, 49 T.C. 557, 562 (1968). Expenses associated with maintaining a residence far from one's principal place of employment for personal reasons, therefore, are not deductible. Tucker v. Commissioner, 55 T.C. 783, 786 (1971); see also Commissioner v. Flowers, 326 U.S. 465, 470 (1946).

Nonetheless, a taxpayer may claim his personal residence as his home where he is away from home on a temporary, rather than indefinite or permanent, basis. Peurifoy v. Commissioner, 358 U.S. 59, 60 (1958); Kroll v. Commissioner, 49 T.C. at 562. The determination of whether employment is temporary is a question of fact. Mitchell v. Commissioner, T.C. Memo. 1999-283, 78 T.C.M. (CCH) 355, 357 (1999). An employment period exceeding one year is not temporary, sec. 162(a) (flush language), nor is employment for which termination within a short period cannot be foreseen, cf. Mitchell v. Commissioner, 74 T.C. at 581.

III.  The Parties' Arguments

A.  Petitioners' Argument

Petitioners point out that they were residents and citizens of their respective countries during 2012 and were in the United States to work in temporary jobs as part of an exchange program. Per the terms of their visas, they argue, they could not stay in the United States for longer than four months and were required to maintain their residences abroad. See 8 U.S.C. sec. 1101(a)(15)(J). Petitioners liken their situation to that of the taxpayer in United States v. Le Blanc, 278 F.2d 571 (5th Cir. 1960), who, being a justice of the Louisiana Supreme Court and thus required to retain his lifelong home in his district while working in New Orleans, was allowed to deduct as a traveling expense his rental of an apartment in New

Orleans. According to petitioners, they were required to maintain their residences in their home countries by provisions of U.S. immigration law and thus were "away from home" for purposes of section 162(a)(2). Moreover, petitioners argue, unlike in the case of domestic students who travel to other locations for their summer jobs, employers benefit from SWTP participants' maintenance of residences in their home countries because the employers (1) may legally employ such nonresident aliens to fill seasonal employment needs that might otherwise go unmet, (2) recognize employment tax savings, see sec. 3306(c)(19), and (3) receive an enthusiastic, healthy, educated, insured, English-speaking worker who has been vetted by the U.S. Department of State and the program sponsor. Petitioners further contend that because they maintained close links to their home countries--by maintaining driver's licenses, being registered to vote, and so forth-- and intended to return there and did so upon the expiration of their time in the United States, their tax homes were in their respective home countries.

Thus petitioners argue that they were engaged in the temporary business of being employees in the United States and should be allowed to deduct their ordinary and necessary business expenses while away from home. Citing Peurifoy, they opine that because their work was temporary, the existence of business exigencies is immaterial. Petitioners maintain that they need not have

been employed or otherwise engaged in a trade or business before accepting temporary work at a second location.[4]

Finally, petitioners contend in their opening brief, a portion of their deducted expenses, such as visa and program fees and insurance, are not travel expenses and are not subject to the section 162(a)(2) "away from home" requirement. However, petitioners maintain in their answering brief that any "travel health insurance" is related to travel and therefore should be deducted as a traveling expense. Either way, with respect to the cost of health insurance, petitioners argue that this insurance was not only in furtherance of their trade or business but was strictly required as a condition of their procuring a J visa and as a condition of their participation in the SWTP and thus their employment.

---

[4]Petitioners also point to guidance issued by the Commissioner allowing for the reduction of statutory withholding from nonresident aliens' income to account for deductible expenses. See, e.g., Priv. Ltr. Rul. 9151014 (Dec. 20, 1991). However, we discount petitioners' references to such guidance for two reasons. First, guidance issued by the Commissioner is neither precedent nor authority in this Court. See sec. 6110(k)(3); see also, e.g., Colorado, Ltd. v. Commissioner, T.C. Memo. 1992-157, 63 T.C.M. (CCH) 2435, 2438 (1992) ("As a matter of law, petitioner cannot rely on private letter rulings as authority for a position[.]"). Second, the guidance cited pertains to withholding of tax on nonresident aliens under sec. 1441, not the underlying validity of the claimed deductions.

B.    Respondent's Argument

Respondent's primary argument is that petitioners each had a principal place of business in the United States at the location of their respective summer jobs, and therefore their tax homes for purposes of section 162 were in the United States, not their home countries. Respondent points out that pursuing an education full time does not constitute a trade or business under section 162. See Weiberg v. Commissioner, 639 F.2d 434, 437 (8th Cir. 1981), aff'g Paul v. Commissioner, T.C. Memo. 1980-147. Each of petitioners was a full-time student during 2012. Ms. Zolotareva and Mr. Conway were not employed in their home countries at that time; their sole work was through the SWTP in the United States. While Mr. Liljeberg had been employed part time in Finland, he quit that job before coming to the United States and did not take it up again upon his return to Finland. Because pursuing an education full time is not a trade or business, respondent asserts, petitioners did not have tax homes in their home countries. It follows, according to respondent, that because petitioners were never away from their homes in the pursuit of a trade or business, they are not permitted to deduct costs for traveling or meals and entertainment.

Respondent disagrees with petitioners' assertion that the temporary nature of a job may obviate the need for a business reason to maintain a separate personal

residence. Respondent points to two cases from the Courts of Appeals that he contends contradict petitioners' position. In the first, Hantzis v. Commissioner, 638 F.2d 248 (1st Cir. 1981), rev'g T.C. Memo. 1979-299, the Court of Appeals for the First Circuit held that a law student who lived in Boston with her husband during the school year could not deduct her traveling expenses when she took a summer job in New York. In the second, Wilbert v. Commissioner, 553 F.3d 544 (7th Cir. 2009), aff'g T.C. Memo. 2007-152, the Court of Appeals for the Seventh Circuit held that a laid-off airline mechanic was not entitled to deduct the costs of traveling to and living in various cities where he obtained temporary work by "bumping" less-senior mechanics. In both cases, the Courts of Appeals found that taxpayers must have business, rather than personal, reasons for living in two places. Respondent maintains that petitioners did not have business reasons for maintaining their personal residences in their home countries. Further, respondent argues, allowing petitioners to deduct travel expenses related to their summer jobs in the United States would create a rule affording nonresident aliens a deduction to which domestic taxpayers are not entitled. Cf. Commissioner v. Janss, 260 F.2d 99 (8th Cir. 1958) (disallowing an Iowa college student's deduction for travel expenses while employed as a construction worker in Alaska on the grounds that no business exigencies required his travel there), rev'g T.C. Memo. 1957-84.

Moreover, respondent observes, the purpose of the "away from home" provision "is to mitigate the burden of the taxpayer who, because of the exigencies of his trade or business, must maintain two places of abode and thereby incur additional and duplicate living expenses." Kroll v. Commissioner, 49 T.C. at 562. In view of this, respondent argues, petitioners must demonstrate that they incurred expenses related to their personal residences. Mr. Liljeberg and Ms. Zolotareva have not presented such evidence, and while Mr. Conway did send money to his mother to maintain his residence in Ireland, respondent's position is that Mr. Conway has failed to demonstrate that he had incurred substantial living expenses.

Respondent further asserts that petitioners' expenses for travel health insurance are deductible not under section 162 but only under section 213(a), subject to that section's 10% floor. See Green v. Commissioner, 74 T.C. 1229, 1236 (1980) ("Insuring against the costs of maintaining petitioner's health is primarily a personal concern, not merely a business concern." (fn. ref. omitted)).

C.      The Parties' Concessions

As noted above, petitioners have conceded that the $1,510 paid by Ms. Zolotareva as program fees was paid in 2011 and is not deductible for 2012.

Respondent, in turn, concedes that petitioners are entitled to deduct under section 162 any fees paid for their J visas and for their participation in the SWTP

as unreimbursed employee expenses, subject to the 2% floor on miscellaneous itemized deductions. We note that our "acceptance of a concession does not mean that the Court has evaluated and accepted the underlying substantive issues or legal principles supporting the concession." Fazi v. Commissioner, 105 T.C. 436, 444 (1995). In practice, the Court will accept concessions of law in the interests of judicial economy unless justice requires otherwise. Id. Since petitioners do not oppose respondent's concession, cf. McGowan v. Commissioner, 67 T.C. 599, 601, 605 (1976) (refusing to accept the Commissioner's unilateral offer of concession opposed by the taxpayer on the grounds that "the interests of justice will be best served by a rejection of such concession"), we will accept it in the interest of judicial economy without expressing an opinion as to its correctness.

IV.    Deductibility of Petitioners' Expenses

A.    Travel and Living Expenses

Petitioners have paid a host of expenses in connection with their participation in the SWTP that they now seek to deduct. After respondent's concession that visa and program fees are deductible, we are left to decide whether petitioners may deduct their expenditures for travel and living expenses. We address separately the deductibility of health insurance expenses.

As noted earlier, for an expense to qualify under section 162(a)(2) it must (1) be ordinary and necessary, (2) have been incurred while the taxpayer was "away from home", and (3) have been incurred in the pursuit of a trade or business. Barone v. Commissioner, 85 T.C. at 465. There is little dispute between petitioners and respondent as to the satisfaction of the first and third criteria. Rather, the parties have focused on the second factor--that the putative business expenses must have been incurred while the taxpayer was "away from home". We agree with respondent that petitioners were not "away from home".

It is true that while the cost of maintaining a residence far from one's principal place of employment for personal reasons is not deductible, Tucker v. Commissioner, 55 T.C. at 786, a taxpayer may in certain cases claim his personal residence as his tax home when his absence is temporary, Peurifoy v. Commissioner, 358 U.S. at 60. However, a temporary absence alone does not make a taxpayer's personal residence his tax home. The taxpayer must have a business reason to maintain a distant, separate residence. See, e.g., Tucker v. Commissioner, 55 T.C. at 786; Wirt v. Commissioner, T.C. Memo. 1988-329, 55 T.C.M. (CCH) 1369, 1371 (1988) ("There must be some business, as opposed to personal, reason for the taxpayer maintaining the original home for it to qualify as such under section 162.").

In view of the above, respondent's citation of <u>Hantzis</u>, an opinion cited approvingly by multiple Courts of Appeals, <u>see, e.g.</u>, <u>Wilbert v. Commissioner</u>, 553 F.3d 544, 548-549 (7th Cir. 2009), <u>aff'g</u> T.C. Memo. 2007-152; <u>Henderson v. Commissioner</u>, 143 F.3d 497, 500-501 (9th Cir. 1998), <u>aff'g</u> T.C. Memo. 1995-559; <u>Yeates v. Commissioner</u>, 873 F.2d 1159, 1160-1161 (8th Cir. 1989), <u>aff'g</u> T.C. Memo. 1988-259, is apposite and represents a fair statement of the law. The Court of Appeals for the First Circuit observed in <u>Hantzis v. Commissioner</u>, 638 F.2d at 255:

> The temporary employment doctrine does not, however, purport to eliminate any requirement that continued maintenance of a first home have a business justification. We think the rule has no application where the taxpayer has no business connection with his usual place of residence. If no business exigency dictates the location of the taxpayer's usual residence, then the mere fact of his taking temporary employment elsewhere cannot supply a compelling business reason for continuing to maintain that residence. Only a taxpayer who lives one place, works another and has business ties to both is in the ambiguous situation that the temporary employment doctrine is designed to resolve. In such circumstances, unless his employment away from his usual home is temporary, a court can reasonably assume that the taxpayer has abandoned his business ties to that location and is left with only personal reasons for maintaining a residence there. Where only personal needs require that a travel expense be incurred, however, a taxpayer's home is defined so as to leave the expense subject to taxation. * * * Thus, a taxpayer who pursues temporary employment away from the location of his usual residence, but has no business connection with that location, is not "away from home" for purposes of section 162(a)(2). [Citations omitted.]

The facts in <u>Hantzis</u>, where a law student attending school in one city sought to deduct travel and living expenses she incurred while employed for the summer in a different city, are similar to the facts in petitioners' situation. Petitioners were full-time students from abroad who came to the United States to work for a single summer before returning to their home countries. Ms. Zolotareva and Mr. Conway had no business connections with their home countries at the time. And while Mr. Liljeberg was employed part time as a security guard in Finland, he terminated that employment before arriving in the United States and did not resume it upon his return. Thus in view of their lack of business connections with their respective home countries, petitioners could not have been "away from home" in 2012.

We observe that petitioners have made much of the fact that the J visas on which they entered the United States would not have been issued to them were each of them not "an alien having a residence in a foreign country which he has no intention of abandoning". <u>See</u> 8 U.S.C. sec. 1101(a)(15)(J). They understand this requirement to mean that they were obligated legally to maintain their homes in their home countries as a condition of their participation in the SWTP and thus their employment through that program.

We disagree. First, "residence" for immigration purposes is not necessarily coterminous with "residence" for tax purposes, which itself is different from "tax home" under section 162(a)(2). See Pappas v. Commissioner, T.C. Memo. 1975-321, 34 T.C.M. (CCH) 1397, 1398 (1975) ("This Court has held repeatedly that the location of an alien's residence for the purposes of section 871 and its predecessors is not necessarily the same as his tax home for the purposes of section 162(a)(2). * * * While the resolution of both issues depends upon evidence regarding the nature of a taxpayer's stay in a particular location, the issue of residency under section 871 involves consideration of a taxpayer's intent, whereas the issue under section 162(a)(2) does not."). Second, U.S. immigration law defines "residence" as an alien's "place of general abode"--that is, "his principal, actual dwelling place in fact, without regard to intent." 8 U.S.C. sec. 1101(a)(33) (2013). The Supreme Court has interpreted the rule that a nonimmigrant alien have a "residence" in a foreign country to mean that he must maintain a domicile in his home country; in other words, the alien must not intend to immigrate permanently to the United States. See Elkins v. Moreno, 435 U.S. 647, 665-666 (1978); see also Toll v. Moreno, 458 U.S. 1, 6 n.8 (1982) (citing Moreno, 435 U.S. at 665). No court has understood "residence" in this context to require the maintenance of a second abode or the incurring of duplicate living costs.

Moreover, neither the regulations governing the SWTP under title 22 of the U.S. Code, nor the regulations governing immigration under title 8, provide that a nonresident alien must maintain a second dwelling in his home country. Instead, they only require that a "nonimmigrant alien * * * agree to depart the United States at the expiration of his or her authorized period of admission". 8 C.F.R. sec. 214.1(a)(3)(ii) (2012). One can envision the following situation. A student from Europe lives in a dormitory during the academic year, at the conclusion of which he must move out of his room. He comes to the United States on the SWTP and spends the summer in this country. In the fall he returns to his home country and moves into another dormitory for the following academic year. This student did not maintain a physical dwelling in his home country during the summer, yet there is no provision that would terminate his legal status on these grounds alone.

All of this is to show that there is no requirement at law that an SWTP participant maintain a second abode in his home country. Nor have petitioners presented any evidence to corroborate a contractual requirement to that effect imposed upon them by their sponsors, employers, or any other party. Accordingly, we conclude that none of petitioners falls into the category of "the taxpayer who, because of the exigencies of his trade or business, must maintain two places of abode and thereby incur additional and duplicate living expenses." Cf. Kroll v.

Commissioner, 49 T.C. at 562. To the extent that any of petitioners had incurred expenses to maintain their abodes in their home countries, cf. Wirth v. Commissioner, 61 T.C. 855, 859 (1974) ("[A] taxpayer has a 'home' for the purpose of section 162(a)(2) only when he has incurred substantial living expenses at a permanent place of abode."), those expenses were by their personal choice and not by a dictate of their employers or the law.

We therefore hold that the rule of Hantzis v. Commissioner, 638 F.2d at 255, that, "[i]f no business exigency dictates the location of the taxpayer's usual residence, then the mere fact of his taking temporary employment elsewhere cannot supply a compelling business reason for continuing to maintain that residence", applies here. Accordingly, respondent properly denied petitioners' claimed deductions for travel and living expenses paid in connection with their participation in the SWTP.

B.    Health Insurance

Petitioners claim with respect to their health insurance policies that the costs of these policies are not travel expenses and therefore are not subject to the section 162(a)(2) "away from home" requirement. Petitioners argue that their purchase of health insurance was to further their trade or business and was strictly required as a condition of receiving a J visa and participating in the SWTP. Petitioners also

point out, perhaps as an alternative theory, that any "travel health insurance" is related to travel and should be deducted as a traveling expense.

Respondent disagrees, asserting that petitioners' expenses for health insurance are not deductible under section 162 but may instead be deducted only under section 213(a), subject to that section's 10% floor, as required by Green v. Commissioner, 74 T.C. at 1236. We concur with respondent.

Unless such deductions are expressly permitted, a taxpayer may not deduct "personal, living, or family expenses." Sec. 262(a). Section 213(a) is an exception to the general rule and allows the deduction of medical expenses, including amounts paid for health insurance, to the extent such expenses exceed 10% of a taxpayer's adjusted gross income and are not compensated for by insurance or otherwise.

Notwithstanding that health insurance was required as a condition of petitioners' participation in the SWTP, see 22 C.F.R. sec. 62.14, we have consistently held that insuring against the costs of maintaining a taxpayer's health "is primarily a personal concern, not merely a business concern" and that the expense of such insurance "is deductible only by way of section 213(a)", Green v. Commissioner, 74 T.C. at 1236; see also Minick v. Commissioner, T.C. Memo. 2010-12, 99 T.C.M. (CCH) 1054, 1057 (2010) ("[P]etitioners' payments of life

and medical insurance premiums are not deductible under section 162."); <u>Kelly v. Commissioner</u>, T.C. Memo. 1991-605, 62 T.C.M. (CCH) 1406, 1407 (1991) ("[T]he costs incurred in maintaining stamina and good health are inherently personal expenditures.").  It is irrelevant that health insurance is required by an employer or a provision of law.  For example, current section 5000A(a) requires most taxpayers and their dependents to maintain a minimum level of medical coverage for each month beginning after 2013.  This individual mandate, however, does not change the essentially personal nature of health insurance coverage.  Society of course benefits from having healthy constituents, as does an employer from having healthy employees.  Likewise, the Government and the country benefit from ensuring that alien exchange program participants are covered in case of a medical emergency.  But in all cases the one who most overwhelmingly benefits is the individual, whose personal health is better protected by having insurance.

Accordingly, we find that petitioners may not deduct their expenses paid in connection with the purchase of health insurance, except to the extent that these expenses may be deductible under section 213(a).

V.  Conclusion

Petitioners have sought to deduct certain expenses they paid in 2012 in connection with their participation in the SWTP.  Respondent has conceded the propriety of petitioners' claimed deductions for program and visa fees, and petitioners have conceded respondent's denial of a deduction for program fees paid by Ms. Zolotareva in 2011.  We determined that petitioners may deduct their costs for travel health insurance only insofar as section 213(a) allows.  As to the remaining expenses, we found that petitioners may not deduct them, because they were not "away from home" within the meaning of section 162(a)(2).

We have considered all of the parties' arguments, and to the extent not discussed above, conclude that those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

Decisions will be entered under

Rule 155.